# CASE

---

### RUSSELL vs. MINOR.

Where, under a contract for the sale of chattels, a delivery of a *portion* of the property sold was made to the purchaser, under an agreement that a note should be given for the *whole quantity* upon the delivery of the *residue* at a future day, the delivery of the first parcel was HELD to be *conditional*, and that on the delivery of the residue and the refusal of the purchaser to give the note and to deliver up the first parcel on *demand*, an action of *replevin* for the *wrongful detention* might be sustained.

Whether the right of property in the *first parcel* would have passed to the purchaser had there been no agreement as to the subsequent giving of the note, *quere*.

Whether a vendor is bound to take his own notes in payment, where the agreement is that he shall have the purchaser's notes *payable at a future day*, so that he may negotiate them and turn them into cash, *quere*.

ERROR from the supreme court. Russell brought an action of *replevin* against Minor for a large quantity of paper, and declared in the *detinet* only. *Beach*, a witness for the plaintiff, testified that himself, and one George Hammeken and John W. Kearney were manufacturers of paper in the county of Ulster, doing business under the name of "The Saugerties Paper Manufacturing Company." About 1st September, 1833, the company entered into a contract with Minor to furnish him 2045 dollars worth of paper, of particular descriptions, at specified prices, for which Minor was to give his note at six months. The Company being indebted to the plaintiff for moneys advanced and responsibilities incurred, turned out to him the paper in question, (whether in payment in whole or in part, or as security, does not appear,) which he directed the witness to ship and apply upon the contract made with the defendant, the

plaintiff approving of a sale of the paper *on credit*, to the defendant. The paper amounting, at the prices agreed upon, to the sum of $1321.25, was taken to the defendant's place of business, and delivered to him on 25th *September ;* the witness asked the defendant to give his note for the amount of the parcel thus delivered, to which he answered, *that he would give his note for the whole when the remainder was brought,* and the parcel now delivered could remain till then. A receipt was given by the defendant for the paper received by him. On the second day of *October,* the remainder of the paper was delivered, when the witness, *Beach,* demanded of the defendant a note for the whole quantity delivered, which he refused to give, alleging that he held notes or bills against the *Saugerties Company.* A *demand* of the paper was subsequently made and refused to be complied with. The defendant was not told that the paper belonged to the plaintiff untilthe delivery of the second parcel. Two suits were brought by the plaintiff: one for the parcel first delivered, which is this suit, and the other for the parcel secondly delivered. In this suit the plaintiff was *nonsuited ;* in the other he recovered. The plaintiff asked for a new trial in this suit, which was refused by the supreme court, and judgment rendered for the defendant. The following is the opinion delivered in the supreme court.

*By the Court,* BRONSON, J. Whatever right the plaintiff may have in an action brought to recover the price of the goods, I think he shewed no ground for recovery in the action of replevin. If the property belonged to the plaintiff, Beach, as his agent, and by his direction, delivered it to the defendant on a contract of sale previously made with *The Saugerties Company.* The plaintiff's name was not mentioned, and there was no condition whatever connected with the delivery. When the second parcel was delivered, a controversy arose about the mode of payment, but that could not affect the absolute delivery of this parcel seven days before.

When the defendant was asked to give his note, he replied that he would give his note for the whole when the

remainder was brought, and the parcel now deliverd could remain till then. The plaintiff's counsel insists, that this made a condition that the paper was to remain in the same situation until all was received. I think it meant, that the giving of the note according to the contract, could remain until the residue of the paper was delivered, and nothing more. New trial denied.

The plaintiff sued out a writ of error, removing the record into this court, where the cause was argued by

*S. Sherwood,* for the plaintiff in error.

*T. Sedgwick, jun.* for the defendant in error.

*Points for the plaintiff in error :*

I. The paper in question, amounting to $1321.25, parcel of a lot of $2200, was sold and transferred by the Saugerties Paper Manufacturing Company to the plaintiff, and by his direction delivered at defendant's office, 25th September, by Beach, his agent, and where, by defendant's request, this parcel was permitted to " remain" until the whole was delivered.

II. The delivery at the office was a conditional delivery, and did not amount to a sale, until the condition was complied with. *Woodworth* v. *Kissam,* 15 *Johns. Rep.* 186. *Palmer* v. *Hand,* 13 *id.* 734. *Haggerty* v. *Palmer,* 6 *Johns. Ch. R.* 437. *Murray* v. *Burling,* 10 *Johns. R.* 172. 15 *id.* 434. *Allison* v. *Matthews,* 3 *id.* 235. *Burk* v. *Grimshaw,* 1 *Edward's Ch.* 146. *Keeler* v. *Fileld,* 1 *Paige,* 312. *Copland* v. *Bossent,* 4 *Wash. C. C. R.* 588. *De Wolf* v. *Babbel,* 4 *Mason,* 289. 4 *Mass. R.* 406. *Hussey* v. *Thornton,* 4 *Barn. & Cress.* 946.

III. It ought to have been submitted to the jury, whether the withholding of the paper in the manner proved, was not a fraudulent detention of the goods; and under the circumstances the nonsuit was erroneous. 15 *Johns. R.* 434. 3 *id.* 235. *Harris* v. *Smith,* 3 *Serg. & Rawle,* 20.

*Points for the defendant in error :*

I. The defendant in error contracted in this case with the Saugerties Paper Manufacturing Company, Kearney, Hammeken and Beach. The paper in question was made and delivered under that contract, and the defendant was ignorant of any right which the plaintiff had, if any, until long after the delivery. The plaintiff, therefore, stands in the same situation with Kearney, Hammeken and Beach.

II. The delivery of the paper in question was complete and unconditional upon defendant's promise to give his note at a future day. The property, therefore, passed, and replevin will not lie. *Haswell* v. *Hunt,* 5 *T. R.* 231. *Lupin* v. *Marie,* 6 *Wendell,* 80. *Furness* v. *Hone,* 8 *id.* 256. *Barrett* v. *Pritchard,* 2 *Pick.* 515. *Carlton* v. *Sumner,* 4 *id.* 516. *Chapman* v. *Lathrop,* 6 *Cowen,* 110. *Payne* v. *Shadbolt,* 1 *Campb.* 427. 2 *Kent's Comm.* 497. *Graham on New Trials, p.* 278, *et seq. Hoyt* v. *Gilman.* 8 *Mass R.* 336. *Pratt* v. *Hull,* 13 *Johns. R.* 334. *Brook* v. *Wood,* 13 *Price,* 667.

III. The defendant was not bound by the contract to give his note until all the paper was delivered.

IV. The plaintiff himself intended to complete the contract made by Kearney, Beach and Hammeken, and the paper was delivered with his consent. This suit is brought in his name to avoid subjecting himself to the set-off, which defendant would have a right to make, and which would be made, if a suit were brought in the name of Kearney, Beach and Hammeken, for goods sold and delivered or for work, labor and materials. *Chapman* v. *Lathrop,* 6 *Cowen,* 110.

After advisement, the following opinions were delivered :

By Senator EDWARDS. The principal question in this case appears to be, wether the plaintiff had such an interest in the property replevied as entitled him to maintain the action. To maintain this action it is not necessary that he should have the absolute interest in the property ; a special interest which would entitle him to possession is suffi-

Russell v. Minor.

cient. For the purposes of this action, therefore, it is immaterial whether the turning out of the property to the plaintiff amounted to a sale, or only gave him a qualified interest to secure him for the advances he had made.

It appears that the plaintiff made advances which enabled the company to manufacture the paper in question, and that it was turned out to secure him for those advances. This gave him a qualified interest in the property to the amount he had advanced for the company; for this was previous to the delivery of any part of the paper to the defendant, and no interest whatever in the property could attach to the defendant before the delivery and the giving of the note specified in the agreement, unless the giving of the note was waived. As the plaintiff, therefore, had a qualified interest which was sufficient to enable him to maintain the action, did he by any act of his, divest himself of that interest, or was he divested of it by any act on the part of Beach, his agent? The delivery of the property by the order of the plaintiff, on the contract with the defendant, could not have that effect, for by the terms of that contract, the defendant was to give his note payable in six months; and had it been given, the note could have been transferred to the plaintiff before due, and no set-off could have been made against it, and thereby the interest the plaintiff had in the property would have been protected. The consent of the plaintiff, therefore, to have the property delivered on the contract under such circumstances, is no evidence of intention on his part to abandon his interest or claim in it. For as he had ordered it delivered on a contract already made, one of the terms of which was to give the note, he had no reason to expect that the property would be delivered and the right of property changed, unless the terms of the contract were complied with by the giving of the note stipulated.

Could *Beach* as his agent divest him of the interest he held in the property and transfer it to the defendant without his consent? In my judgment he could not. As agent, Beach had no such authority. He was a special agent, and

all the authority he had was to deliver the paper on the contract already made, and take the note payable in six months ; and for no other purpose was he entrusted with the paper. If the note was not given according to the contract, he was not even authorized to deliver the paper, and any such delivery, or any new agreement he might make without authority, could not affect the rights of the plaintiff ; being a special agent for a particular purpose, he could not proceed. beyond the scope of his authority, so. as to affect the rights of his principal. If property is entrusted to a carrier, and he turns it out in payment of his own debts, the owner's rights are not thereby affected.

But if it could be inferred, from the nature of the transaction, that Beach had a general authority as. to. the delivery of the property in question,. did he exercise that authority so as to change the rights of the parties ?. Did he do any act which could legally. divest the plaintiff. of his interest in. the property ? When. on the delivery of property sold, an act is to be. done by the purchaser, and the seller delivers the property without requiring it to be done, the delivery is a waiver, and the property is transferred to. the purchaser, although he has not complied with the terms. of the contract ; *Lupin* v. *Marie*, 6 *Wendell*, 77 ; *Haswell* v. *Hunt*, 5 *T. R.* 231 ;. *Chapman* v. *Lathrop*, 6 *Cowen*, 110 ; 2 *Kent's Com.* 496 ;. but where something is to. be done by the purchaser simultaneously. with the delivery,. which has. not been waived by. delivering the property without requiring it to be done, the delivery. is conditional and does not become complete so. as to change the right of. property until. the condition is complied. with, although the vendee get the possession of the goods ;. for possession in such case is obtained under an expectation. on the part of the vendor that the terms of the contract will be complied with, and the vendor does not thereby part with his lien upon the property. 2 *Kent's Comm.* 497. *Palmer* v. *Hand*, 13 *Johns.. R.* 435. *Haggerty* v. *Palmer*, 6 *Johns. Ch. R.* 437. *Hussey* v. *Thornton*, 4 *Mass. R.* 405. *Keeler* v. *Field*, 1 *Paige*, 315. *Copeland* v. *Bosquet*, *Wash. C. C. R.* 588. When the delivery of property is a waiver of the condition, it must be so

intended by the parties in interest or their authorized agents at the time of delivery. *De Wolf* v. *Babbet*, 4 *Mason*, 295. 3 *Serge. & Rawle*, 24. *Keeler* v. *Field*, 1 *Paige*, 312. In the case under review, the agreement the company made with the defendant was to furnish him with two thousand and forty-five dollars worth of paper of a particular description, at specified prices, for which he was to give his note at six months. The condition, therefore, on which the paper was to be delivered, was the giving of the note at six months; was this condition waived by the delivery? If it was, then the delivery became absolute and changed the rights of the parties, and the plaintiff cannot sustain his action. On the 25th of September a lot or parcel of the paper was deliverd on the contract, and a note demanded for the amount; the defendant answered, "he would give his note for the whole when the remainder was brought, and the parcel now delivered could remain until then." He did not therefore object to the giving of his note when the whole was delivered; but on the contrary, assented to it, thereby recognizing the contract even down to this late period. Neither party, therefore, had reason to suppose from what then took place, that the right of having the note for the whole amount, when the whole of the paper should be delivered, was waived. The defendant was under no obligation to give his note for the *parcel* delivered, nor had Beach or the plaintiff a right to exact it until they had complied with the terms of the contract on their part by delivering the *whole quantity*. The agreement did not require him to give his notes for the separate parcels delivered, but he was to give his note at six months for the two thousand and forty-five dollars worth of paper. The delivery of the whole quantity, therefore, formed a condition precedent on the part of the vendor ; and although Beach left the first parcel without receiving the note, he waived nothing, for he had not then put himself in a condition to demand the note he was to receive by the terms of the contract. *See Champlin* v. *Rowley*, 18 *Wendell*, 187, *and the note appended to that case*.

It is questionable whether property which consists in heavy and cumbersome articles, which from their nature

must necessarily be delivered at different times, on a contract·for· which when the whole ·delivery is complete, the purchaser is.to give his·note or pay the money, or do some other act, to·fulfil the contract on his part, the right of property in the separate parcels thus delivered becomes changed, so as to enable the purchaser to exercise acts of ownership over it even when nothing is said.about it at the time of delivery. I am inclined to the opinion it does not, and that the vendee, while the property is in a state of being thus delivered, is a trustee .of each separate parcel, the vendor still retaining his lien and ownership over it. But this is not a case of that description; on the defendant's note being called for, on a delivery of a part of the paper,- he declined compliance on the ground that he would give it for the whole, when the remainder was delivered; thereby virtually denying his liability to give his note for a part of the amount he was by the contract to receive; and he adds that the parcel delivered could remain until then. How remain ? Why clearly, as it then was, in a state of being delivered, waiting the remainder which was to make up the whole quantity which was to entitle the company to the note according to the terms of the contract. It appears to me, we cannot infer from any thing that transpired at the time the first parcel was delivered, that *Beach* intended to waive any of the terms of the contract, even had he the power of doing so; for he at this time exacted more than he was authorized by its terms to demand. When the remainder was delivered and the right to demand the note according to the terms of the contract accrued, it was demanded, and had that demand been acceded to and the note given accordingly, the right of. the property would have been changed; but it was declined. Nothing, therefore, took place on the part of the defendant which could change the right of property, as the only thing that could have effected that object was withheld by the defendant, although demanded. No interest or right of property, therefore, ever did vest in him.

The receipt given could not change the nature of the transaction. It was at best a mere memorandum to show

Russell v. Minor.

the amount of paper received from the company—but could not have been designed or intended by the parties to change the terms of the contract; nor could it have that effect. Beach being a special agent for a particular purpose, had not the authority to change the contract without the consent of the plaintiff. The property being turned out to the plaintiff, put on board, and ordered to be delivered on the contract then already made, was virtually in the possession of the plaintiff, and that possession and interest was not legally changed, as the note which alone was to effect that object was never given by the defendant, but declined, although demanded according to the terms of the contract. Being of the opinion, therefore, that the plaintiff had a right to sustain his action, I am for reversing the judgment of the supreme court.

By Senator WAGER. The paper in question in this suit was turned out to the plaintiff in payment of advances made by him to the manufacturers. The transaction was valid as between the parties to it, and passed the title of the property to the plaintiff, who as regards the *Saugerties Company*, had a right to maintain an action against any one who should interfere with it. It having been delivered to the defendant under a contract made with that company, without disclosing the ownership, does not take away the plaintiff's right to maintain his action for its recovery, unless the fact of concealing its ownership from the defendant has led him to put himself in a situation in relation to the company by which he has sustained injury, and which he would otherwise have avoided.

It is true, he pretended that he had purchased notes or bills against the company with which he intended to pay for the paper on its delivery, instead of performing the contract made with them, by giving his note at six months. But there is no evidence in this case, that he owned such notes or bills; there is nothing except his own declaration to that effect. Nor is it clear that had he then owned the notes or bills of the company, that he would have had the right to urge the possession of them as a justification of his conduct in

refusing to perform the contract. The company had a right to insist upon a performance of the contract, as a condition to the complete and absolute delivery of the paper; and had he thus performed by giving his note at six months, that note might have been transferred before maturity to a *bona fide* purchaser so as to defeat any set-off of the bills or notes of the company in the hands of the defendant. I am therefore of opinion that he could not, even as against the *Saugerties company*, have legally set up this defence to an action; and if he could not have defended as against them, it is clear that he cannot do so as to the plaintiff, in whom the title of the property had vested some days prior to its delivery, by a valid sale made by the company.

Then for the purpose of deciding this cause, we may regard this action as having been instituted in the names of the persons constituting the *Saugerties company*, though I think the right of the plaintiff, under the circumstances, somewhat stronger than theirs. If they could have sustained an action, there can be no doubt that the judgment below should be reversed.

The contract was for the delivery of a certain quantity of paper, for which the defendant was to give his note at six months. No time is specified in the contract when the note was to be given. The giving of the notes, and the delivery of the paper, are consequently simultaneous acts. The giving of the note on the delivery, was therefore a condition of the sale; and the delivery of the paper was conditional, not absolute, unless there was a waiver of the note at the time of the delivery, by giving up the possession and control of the property and omitting to require the note. In *Chapman* v. *Lathrop*, 6 *Cowen*, 110, it was decided " that where goods are sold to be paid for in cash, no time being agreed on for payment, both the delivery and payment are simultaneous acts, and the vendor may refuse to deliver without actual payment, the latter being a condition of the sale." There the goods were delivered without exacting payment at the time. The next day the vendee's clerk called to pay for them, and offered a note endorsed by the vendors and properly protested, and proposed to pay the balance in cash.

Russell v. Minor.

The vendors refused to receive the note; and about a fort-night after, demanded the property of the vendee. The court held, that the property having been delivered to the purchaser without any fraudulent contrivance on his part to obtain possession, the vendor, under the circumstances, had waived the condition and the property passed to the vendee. It however decides the point, that the delivery and payment are simultaneous acts, and that payment unless waived is a condition to the passing of the title. *Vide also Haggerty* v. *Palmer,* 6 *Johns. Ch. R.* 437 ; *Palmer* v. *Hann,* 13 *Johns. R.* 434 ; *Keeler* v. *Field,* 1 *Paige,* 312.

In *Haggerty* v. *Palmer,* goods were sold at auction to be paid for in approved endorsed notes at four and six months; and it was shown to be the usage in the city of New-York, where the goods were sold to deliver them to the buyer when called for, and for the vendors afterwards to send for the notes. The vendee, after he had received the goods, before he was called on for the notes according to the terms of the sale, stopped payment and assigned the goods to pay favored creditors. Held, " that the delivery of the goods was conditional, and the vendee a trustee for them until the notes were delivered." In *Keeler* v. *Field,* where a merchant contracted for goods, the price to be secured by his notes endorsed by B. & C., and where the goods in the mean time were forwarded to his residence, it was held " that the property was not changed until the delivery of the notes.". In *Palmer* v. *Hand,* it was decided " that where goods are sold to be paid for on delivery, if on the delivery being completed, the vendee refuses to pay for them, the vendor has a lien for the price, and may resume the possession of the goods." It was contended on the argument, that the doctrine of the above cases, and especially that of *Haggerty* v. *Palmer* was overruled by this court, in the case of *Furniss* v. *Hone,* 8 *Wendell,* 247. On an examination of that case it will be found, that the decision turned upon the ground that the defendant in his answer denied the terms upon which the goods were alleged in the bill to have been delivered, and averred that the goods were bought under a special agreement which did not require

them to be paid for on delivery. The case being heard upon bill and answer without proofs, the answer was held conclusive. The case of *Lupin* v. *Marie*, 6 *Wendell*, 77, decided in this court, though not directly in point, supports the doctrine that where notes are to be given on the sale of goods, if the giving of them be not waived by the vendor, the title to the goods does not vest in the vendee. The extent of the doctrine as contained in the cases of *Palmer* v. *Hand* and *Haggerty* v. *Palmer*, was somewhat doubted by Mr. *Justice* Cowen, in a note made by him as reporter to the case of *Chapman* v. *Lathrop*, 6 *Cowen*, 115 ; and his doubts were principally based upon the case of *Conyers* v. *Ennis*, decided by Story, J. in 2 *Mason*, 236. In that case Judge Story doubts whether the vendor has at any time the right to stop or reclaim his property except when it is strictly in transit ; and he comments with some considerable severity upon the remarks made by Lord Hardwicke, in *Snell* v. *Prescott*, 1 *Atk.* 245, in which his lordship says, " though goods are even delivered to the principal, I could never see any substantial reason why the original proprietor, who never received a farthing, should be obliged to quit all claim to them and come in as a creditor only, for a shilling perhaps in the pound, unless the law goes upon the general credit the bankrupt has gained by having them in his custody." It may be that the doctrine to the extent laid down in the cases referred to in the *note* above alluded to, would be dangerous, but it has never been overruled by this court ; and as it would in most cases promote the ends of justice, I cannot but yield it my assent. If it may be considered as modified at all by decisions in other cases, it has been modified only to this extent : that the property shall be considered as passing, whenever, from the circumstances proved, the party might be considered as trusting to the ability and readiness of the vendee to perform the agreement on his part, and had therefore waived his right to insist upon strict payment or performance on the part of the vendee, as a condition to passing the title.

I think the court below mistaken in supposing the first parcel of paper to be delivered *absolutely* to the defendant,

without any condition whatever. It is true, it was delivered under the contract made with the manufacturers; yet, by that contract, the defendant was to give his note for it at six months. By the contract, the parties evidently contemplated that the whole paper would be delivered at the same time, and the note thereupon executed by the defendant. The paper having been delivered in parcels, the defendant had no right to require, that the first parcel should be considered as delivered, absolutely, until the whole should be ready for delivery, and he be prepared to perform the contract on his part. *Beach*, one of the Saugerties company, attended at the delivery of the paper in question for the plaintiff, and before it was all delivered, asked the defendant for his note for the parcel, to which he answered, " that he would give his note for the whole when the remainder was brought, and the parcel now delivered could remain till then." I think this conversation between Beach and the defendant, shows that the owner did not intend to part with his right and control over the property by delivery until the note was given; and such is the fair construction of the language used. The defendant said in substance, although you have put this property into my store, under a contract for the delivery of a larger quantity, you need not be considered as parting with the ownership, until the remainder shall arrive, and I be ready to perform the contract, by giving my note for the whole; but the parcel now delivered may remain here till then, your property.

The property remained in the plaintiff tunil the delivery of the second parcel, subject to become the absolute property of the defendant, upon his giving his note, according to the terms of his contract. It was, then a conditional delivery; the condition of which never having been performed, the right to control the property was in the plaintiff, at the time the defendant refused his note on the delivery of the last lot. There was nothing in the conduct of the parties on the delivery of the last lot, which showed that the vendor intended to part with the title to the property, and trust to the good faith of the defendant to perform his contract. On the contrary, while the paper was in the act of being

delivered. Beach demanded the note for the whole, of the defendant, who endeavored to put him off till morning, under pretence that he was then engaged, and could not attend to it, but evidently with a view to have the delivery completed, and the vendor trust to his promise to give the note in the morning. He then endeavored to persuade Beach to go away and call again in fifteen minutes, which he declined, and urged an immediate settlement. As soon as the paper was all put into the store, and while Beach was urging the defendant to give his note, he declined upon pretence of having notes or bills against the Saugerties company. I cannot see any thing in the conduct of Beach, who acted as the agent for the vendor, evincing an intention to part with his control over the property until the note was given. The plaintiff, therefore, had a right to an action for the last delivered parcel, upon the ground that he had never parted with the possession, except upon condition that the note should be given at the same time. If he could maintain an action for the last parcel, there can be no good reason why he should not be able to recover for the first also. Its conditional delivery was to become absolute only on the giving the note for the whole.

It was suggested on the argument by the chancellor, that the delivery of both parcels under the contract was an entire transaction, and that the plaintiff could not split up his cause of action and make two suits of it. This suggestion is correct; and if the defendant had taken advantage of the objection in the proper manner, he might have availed himself of it in his defence. But to make it available, he should have pleaded the recovery for the other parcel in bar of the present action. He cannot, under the general issue, avail himself of this defence.

Some doubts were suggested in the opinion of the court below, in relation to sustaining this peculiar *form of action*, whatever might have been the plaintiff's right to recover the value of the property. From an examination of the provisions of the revised statutes, relative to the action of replevin, I think this action well brought. The action lies

Russell v. Minor.

for a wrongful *detention,* as well as for a wrongful *taking.* 2 *C. S.* 522.

The judge erred in directing the plaintiff to be nonsuited. I am therefore, of opinion that the judgment below should be reversed, and that a *venire de novo* should be awarded.

The CHANCELLOR delivered an opinion for an *affirmance* of the judgment of the supreme court, but the reporter not having received a copy of the opinion, is not able to give it to the profession.

Upon the question being put, *Shall this judgment be reversed?* the members of the court divided as follows:

*In the affirmative:* The PRESIDENT of the Senate, (Hon. John Tracy,) and *Senators* DICKINSON, DOWNING, EDWARDS, HULL, HUNTER, LACY, LAWYER, E. P. LIVINGSTON, H. A. LIVINGSTON, LOOMIS, SKINNER, SPRAKER, VAN DYCK, WAGER—15.

*In the negative:* The CHANCELLOR, and *Senators* BECKWITH, LEE, MAYNARD, VEPLANCK, WILLES—6.

Whereupon the judgment of the supreme court was REVERSED, and a *venire de novo* directed to be issued.*

---

*This case was decided in December 1838.