Hays & St. John *v.* W. & J. Currie and N. Kimball.

A broker who is requested to purchase stocks, and who thereupon, to fulfil the order, procures stocks from a holder thereof, to be paid for in cash, and delivers them on the same condition to the party employing him to purchase, cannot be treated by the latter as the seller, so as to be paid by an offset of the broker's own note due to the employer.

In such case, the owner of the stocks is the seller, and the person ordering them is the purchaser. The broker has no interest in the stocks in either capacity.

On a sale of stocks for cash, and a delivery to the purchaser either conditionally that he will pay for them in a few minutes, or through a fraudulent contrivance, without actual payment; the property does not pass, and the seller may recover the stocks from the buyer, or from any person to whom he has transferred them with notice.

J., an insolvent stock broker, owed C. two notes. C. employed K. to aid in effecting payment. K. told J. he wanted J. to buy stocks for him, and next day gave J. an order to buy specific stocks, C. having meantime passed the notes to M., his servant, and procured the latter to give an order on K. for the purchase of the same stocks. J. procured the stocks from H., in order to deliver them for cash, and offered them to K., who then referred him to M. as his principal. J. refused to deliver them to M. without the cash, but was induced by K. to let M. take them on the assurance he would return with the money in a very few minutes. M. did return, and tendered J. his own notes given to C. These were refused, and the stocks demanded, but not given up. C. received the proceeds of the stocks.

*Held,* 1. That there was no loan or unconditional sale of the stocks by H. to J., but that H. was the seller to K. for cash, through their broker J., and the delivery without payment being fraudulently procured, the title did not pass from H.

2. If it be regarded as a sale by H. to J., the delivery to J. was conditional, and the same result ensues.

3. That H. was entitled to recover the stocks from C., or their value with interest, and the costs of the suit.

4. That K. was a proper party to the suit against C.

May 6, 7; June 30, 1846.

The bill was filed, September 8th, 1843, by Hays & St. John,

against W. & J. Currie who were partners in business, and N. Kimball, who was charged with conspiring with them in respect of the subject matter of the suit.

The Currie's answered jointly, and Kimball put in a separate answer. Replications were filed, and proofs were taken on both sides.

The case made by the pleadings and proofs may be thus stated. James W. Henry, a stock broker, had become indebted $1600, on his two promissory notes to W. and J. Currie, and had no apparent means of paying them. They called in the aid of N. Kimball, in order to bring about a payment. Kimball approached Henry, to whom he was almost a stranger, with the suggestion that he was about to turn his attention to buying and selling stocks and would employ Henry as his broker, and the more effectually to gain Henry's confidence, offered to him a place for his desk in his own office. The Currie's indorsed Henry's notes without consideration, to C. McCormick a young Irishman without any means, and who was a servant in the family of J. Currie; and the next day after Kimball's interview with Henry, J. Currie brought McCormick to Kimball, and had him give Kimball an order for the purchase of $5000, of Indiana and Illinois state stocks. Upon which Kimball gave a like order to Henry, but without disclosing to the latter that the purchase was not on his own account.

Henry purchased the state bonds in the usual mode at the public board of brokers, and called on Kimball for the money with which to pay for them and procure their delivery. Kimball declined to furnish the money without the bonds, and the sellers of the bonds were unwilling to part with them without receiving the price.

Upon this, Henry applied to the complainants as his friends, to furnish to him the state bonds so as to fill Kimball's order. He first asked them to loan him three Indiana bonds for a very few minutes, as he was to deliver them for cash. They let him take them, and he offered them to Kimball, saying if K. would take those, he would bring the other two. Kimball replied, that he wanted the whole five or none at all. Henry then returned to the complainants, and procured two Illinois bonds, and pre-

Hays v. Currie.

sented the whole five to Kimball, who called in McCormick and then told Henry that McCormick would take the bonds and bring him the money. Henry objected to delivering the bonds in that manner, that it was unusual, and that Kimball himself was a stranger to him. Kimball quieted him by saying the man would be gone but a very few minutes, and would soon be back with the money. Henry proposed to go with him, to which Kimball objected. Henry was thus induced to hand the bonds to Kimball, who gave them to McCormick. The latter went out, apparently to get the money, and Kimball left his office also. Henry feeling uneasy about the matter, went to the Messrs. Currie's office, where he had occasionally seen Kimball, to inquire if K. was responsible and could be trusted, and W. Currie answered him in the affirmative. He then returned to Kimball's office, and McCormick, who had also returned, offered to pay Henry for the state bonds in his two notes to the Currie's, and the balance of the price, some $150 in cash.

Henry refused to receive them, and told Kimball, the property did not belong to him. He demanded the money or the bonds, but could procure neither; and the complainants afterwards made the same demand of the Currie's with the same result. McCormick by Currie's direction, delivered the bonds to A. S. Crosby, who paid the price for them to the Currie's through McCormick.

*F. E. Mather* and *S. Sherwood*, for the complainants, argued upon the following points:

I. The five bonds in question, were the bonds of the complainants, handed to Henry to be returned by him in fifteen or twenty minutes, or the cash paid for them.

II. The delivery by Henry, to Kimball, or McCormick, was upon condition of the cash being paid simultaneously therefor, and did not amount to a sale till the conditions were complied with. (*Russell* v. *Minor*, 22 Wend. 670; *Woodworth* v. *Kissam*, 15 Johns. 186; *Palmer* v. *Hand*, 13 Johns. 434; *Haggerty* v. *Palmer*, 6 John. Ch. R. 437; *Keeler* v. *Field*, 1 Paige, 312.)

III. The facts in the case show a gross fraud on the part of the defendants, amounting to a conspiracy to cheat and defraud

Henry, or whosoever might trust him, by substituting the unpaid and over due notes of Henry for the bonds in question.

. 1. Falsely procuring McC. the wagon driver of Currie's, to pretend he was the real purchaser, when he was the mere tool of the defendants.

. 2. Inducing Henry to believe he was to receive the cash; instead of which it was intended to hand him his own note.

IV. The defendants ought to be decreed to return to the complainants, the three Indiana bonds and the two Illinois bonds, with damage for their detention; or to pay the value of the bonds at the time of obtaining them and interest.

*G. Buckham* and *E. Sandford,* for the defendants, W. and J. Currie, made the following points :

I. It appears by the bill of complaint that the complainants loaned the stock in question to James W. Henry, for his accommodation, to be used and employed by him in his business, upon his credit and promise to return to them the money therefor. The complainants were no parties to any contract or agreement whatever, with the defendants or either of them, and have no rights against them or either of them, either at law or in equity for any supposed wrongs or injuries upon Mr. Henry.

II. As between the complainants and Henry, the delivery of the bonds to Henry upon his own credit or responsibility was absolute, and was without fraud on the part of Henry. Henry was not acting as broker or agent of the complainants in this transaction. (*Marsh* v. *Wickham,* 14 Johns. 167 ; *Chapman* v. *Lathrop,* 6 Cowen, 110, and note, and cases there cited ; *Conyers* v. *Ennis,* 2 Mason, 236 ; *Lupin* v. *Marie,* 6 Wend. 77 ; 15 ibid. 51 ; *Hogan* v.·*Shorb,* 24 ibid. 458 ; *Cross* v. *Peters,* 1 Greenl. 376 ; *Warren* v. *Sprawle,* 2 J. J. Marsh, 528 ; *Satterlee* v. *Lynch,* 6 Hill, 228 ; Cross on Lien, 8, 38.)

III. The allegation that Henry was employed as a broker, to purchase such bonds, is denied by the answers, and the answers are not disproved. Such allegation is inconsistent with the case as stated by both parties.

IV. The allegations that Kimball stated to Henry, that he would pay in cash, the price of the bonds, is denied in the an-

swer and is not proved. It may be conceded that it was the ex-
pectation of Henry that the cash would be paid ; but a purpose
on the part of the vendee, to set off a note against the vendor,
cannot be legally or properly characterised as a fraudulent trans-
action.

V. The allegations of combination, conspiracy, fraud and arti-
fice, to procure by a pretended purchase, the property not of said
Henry, but of some other persons, and the allegations of know-
ledge of the inability of the said Henry, to purchase said bonds
with his own funds, and the allegations that Kimball and Mc-
Cormick were informed at the time that the bonds did not be-
long to Henry, but had been entrusted to him by the complain-
ants, upon any terms or conditions or in any manner, are de-
nied by the answers and are not proved. (1 Chitt. Gen. Pr.
666.)

VI. The complainants, if they can be permitted to come into
this court upon the case, and to enforce in their own names, any
legal or equitable rights Mr. Henry may have against the defen-
dants, are not entitled to the relief sought, because upon the
pleadings and proofs, Mr. Henry is not entitled to any decree
against the defendants or either of them.

VII. The complainants had a perfect remedy at law, and this
suit is virtually an action of trover brought in this court to re-
cover for five bonds alleged to have been converted by the de-
fendants to their own use. No grounds are stated requiring the
interposition of a court of equity, or a resort to this forum for full
and perfect redress, and the bill prays judgment for damages.

VIII. The bill of complaint should be dismissed with costs.


*G. Bowman*, for N. Kimball.


The Assistant Vice-Chancellor, recapitulated the facts,
and then continued: This brief statement of the transaction, is
sufficient to dispose of the case. It was a contrivance to obtain
this debt of Henry's, by inducing some innocent party to trust
him with the possession of stocks, and then pay for them in
Henry's worthless notes. Allowing that Henry had been guilty
of a breach of trust towards the Currie's, as is alleged in their

answer, their attempt to right themselves by using him to plun-. der others, however ingeniously devised, or satisfactory to their own consciences, was no more nor less than a fraud.

There is nothing in the argument, that there was no fraud in this instance on the part of the purchaser, inasmuch as Henry himself was the purchaser of the bonds from the complainants. In fact, Henry was neither seller nor purchaser. He was applied to as a broker, to buy the bonds, not for himself, but for Kimball. He was a mere middle man between Kimball, and such person as he should find willing to sell the bonds. He had no interest in the affair, beyond obtaining his commissions as a broker. I, cannot, therefore, regard him as the purchaser from the complainants. The real buyers, through McCormick and Kimball,, were the Currie's; and they attempted to procure for Henry's notes, these state bonds, which the complainants parted with for cash.

But if Henry were to be treated as a purchaser from the complainants, the defendants are in no better position. The bonds were delivered to Henry for cash only. There is no pretence that the complainants intended to credit him for the price, a single moment. The contract was therefore unexecuted until payment was made, and the complainants could reclaim their property in the hands of any one, except a *bona fide* purchaser without notice. Neither McCormick nor the Currie's were such purchasers. They did not part with any valuable consideration; and they had notice from the circumstances, as well as Henry's declaration in McCormick's presence, that Henry was not the owner of the bonds.

If Henry is to be deemed the complainant's broker for the sale of the bonds, the case is still stronger in their favor. He bargained them for cash, and he refused to deliver them save for cash. The fact that they passed into the possession of McCormick, through the trickery of Kimball, does not alter the case. Delivery usually precedes payment on cash sales, but the property does not pass until payment be made or waived. On the refusal of McCormick to pay the money, the complainants had a right to demand a return of the bonds. In most of the cases cited by the defendants, the sellers had either waived the pay-

Hays v. Currie.

ment of the price by an unconditional delivery, or had affirmed the sale as an existing contract, by bringing an action upon it. The most recent of those cases, *Hogan* v. *Shorb*, (24 Wend. 458,) was one of the latter class. For the general principle, see *Russell* v. *Minor*, (22 Wend. 659 ;) *Acker* v. *Campbell*, (23 ibid. 372 ;) *Leven* v. *Smith*, (1 Denio, 571.) Also *Haggerty* v. *Palmer*, (6 Johns. Ch. R. 437 ;) and *Keeler* v. *Field*, (1 Paige, 312.)

The objection that there was a sufficient remedy at law, was not taken in the answer, and would now be too late, if it were valid.

The Currie's must be decreed to return the five state bonds, or in default of so doing, to pay the complainants their value on the 2d of September, 1843, with interest from that time; and they must pay the costs of the suit.

As to Kimball, he has no right to costs. He was the voluntary instrument in this fraudulent contrivance, lending himself to the Currie's for a purpose which he could not have doubted was to be accomplished by victimizing some innocent third person. He was a proper party to the suit, and may consider himself fortunate to escape being charged with the complainant's whole claim.

Decree accordingly.