## PAUL *v.* REED AND TRUSTEE.

The trustee purchased of the defendant a hog which he took into his possession, some sugar which he mixed with his sugar, and other articles, the prices of all which were agreed upon, and took out his wallet to pay for them, but the writ was served upon him before he could deliver the money, and he did not deliver it; whereupon the defendant reclaimed the property. *Held*, that this was a sale for cash, and that the title did not pass until payment, and so no debt was created, and (the articles being exempt from attachment) the trustee was discharged.

The substance of the disclosure of the trustee in Azor Paul against Dexter G. Reed, and Dana R. Moody, trustee, was as follows : I moved into Mr. Edes's boarding-house on the 30th day of October last. Said Reed had been keeping the house for Mr. Edes as boarding-master ; he furnished breakfast that morning as such, and I furnished the dinner. Soon after breakfast we examined the hog, butter, sugar, tea, and other articles. Agreed upon the price of each item. I put the sugar in with other sugar of mine. We changed the hog, at my request, from one pen to another, to have him where I wanted to keep

him. We figured up what the articles at the prices agreed upon amounted to, and found they came to thirty dollars and thirty cents. I took out my wallet to pay him for the articles, but before I could get the money ready to deliver him, I was trusteed. The articles were these : hog, $10.50 ; flour, $7 ; butter, $10 ; bedstead, $1 ; sugar and salt, $1.80. I was moving in,—had got one load in the house ; he was moving out at the time of said occurrence. Mr. Reed kept a memorandum, and carried out the price of each article as it was agreed upon. Sheriff Barton served the process as Mr. Reed was figuring up the account. I think the amount of the bill had not been announced by Reed before the writ was served. I had the money to pay the bill in my pocket-book, and the pocket-book in my hand, looking over the figures, when the writ was served. We understood I was to pay cash right in his fingers ; I did not ask any time for him to wait. Reed asked me to give up the articles to him after service of process. I think he said, We can call it no sale, and I can take my stuff. He gave as a reason, that I had not paid him for it. I told him I would ask Esquire Bowers and Esquire Edes, and if they said I was safe to give it up, I had no objections to giving it up. Edes told me to let it stand ; it would be a question.

The court held the trustee chargeable for $30.30. The principal defendant, claiming the property described in the disclosure, excepted, and the question was reserved.

*Bowers*, for the plaintiff.

*S. H. Edes*, for the defendant and trustee.

BELLOWS, C. J. Unless the principal defendant had another hog and other provisions or fuel, so that the value of his provisions and fuel exceeded twenty dollars, all the articles sold to the trustee were exempt from attachment. As there is no proof that he had another hog, or more provisions, or fuel, the court cannot find that he had such ; and, therefore, unless the title in these goods had vested in the trustee so that he became indebted for them, the trustee must be discharged.

The question then is, whether the goods were delivered so as to vest the title in the trustee.

The proof tends to show that the sale was for cash, and not on credit ;—so the trustee testifies, and this is just what would have been intended had no time of payment been stipulated. 2 Kent's Com. *496, *497 ; Story on Con., sec. 796 ; Noy's Maxims 87 ; *Ins. Co.* v. *De Wolf*, 2 Cow. 105. The case, then, stands before us as a contract of sale for cash on delivery : in such case the delivery and payment are to be concurrent acts ; and therefore, if the goods are put into the possession of the buyer in the expectation that he will immediately pay the price, and he does not do it, the seller is at liberty to regard the

delivery as conditional, and may at once reclaim the goods. In such a case the contract of sale is not consummated, and the title does not vest in the buyer. The seller may, to be sure, waive the payment of the price, and agree to postpone it to a future day, and proceed to complete the delivery; in which case it would be absolute, and the title would vest in the buyer. But in order to have this effect, it must appear that the goods were put into the buyer's possession with the intention of vesting the title in him.

If, however, the delivery and payment were to be simultaneous, and the goods were delivered in the expectation that the price would be immediately paid, the refusal to make payment would be such a failure on the part of the buyer to perform the contract as to entitle the seller to put an end to it and reclaim the goods.

This is not only eminently just, but it is in accordance with the great current of authorities, which treat the delivery, under such circumstances, as conditional upon the immediate payment of the price. 2 Kent's Com. *497 ; Chitty on Con., 9th Am. ed., *350, note 1 and cases ; Story on Con., secs. 796, 804 ; *Palmer* v. *Hand*, 13 Johns. 434 ; *Marston* v. *Baldwin*, 17 Mass. 605 ; *Leven* v. *Smith*, 1 Denio 573, and cases cited. So the doctrine was fully recognized in *Russell* v. *Minor*, 22 Wend. 659, where, on the sale of paper, it was agreed that the buyer should give his notes for it on delivery, and the delivery was in several parcels. On delivery of the first, the seller asked for a note ; but the buyer answered that he would give his note for the whole when the remainder was delivered, and the parcel now delivered could remain until then. When the rest was delivered, the defendant refused to give his note ; and the court held that the delivery of all the goods was conditional, and that the seller might maintain replevin for all the goods. The general doctrine is fully recognized in this State in *Luey* v. *Bundy*, 9 N. H. 298, and more especially in *Ferguson* v. *Clifford*, 37 N. H. 86, where it is laid down that if the delivery takes place when payment is expected simultaneously therewith, it is in law made upon the condition precedent that the price shall forthwith be paid. If this condition be not performed, the delivery is inoperative to pass the title to the property, and it may be instantly reclaimed by the vendor.

The question then is, whether the delivery here was absolute, intending to pass the title to the vendee and trust him for the price, or, whether it was made with the expectation that the cash would be paid immediately on the delivery. This is a question of fact, but it is submitted to the court for decision. Ordinarily it should be passed upon at the trial term ; but where the question is a mixed one of law and fact, as it is here, it may not be irregular, if the judge thinks it best, to reserve the entire question for the whole court. Assuming that the questions both of law and fact are reserved, we find that the goods were sold for cash, and of course that the delivery of the goods and the payment of the price were to be simultaneous ; and accordingly, when a part had been delivered, and the seller was figuring up the amount,

and the buyer had taken out his money to pay the price, the act was arrested by the service of this process.

The evidence relied upon to prove the delivery to be absolute and intended to pass the title at all events, is simply and solely the changing of the hog into another pen, and mixing the sugar with other sugar of the buyer. Without this mixing of the sugar, the case would be just the ordinary one of a delivery of the goods with the expectation that the buyer would at once pay the price ; and we think that circumstance is not enough to show a purpose to make the delivery absolute, but rather a confident expectation that the buyer would do as he had agreed, and pay the price at once. The case of *Henderson* v. *Lauck*, 21 Penn. St. 359, was very much like this. There was a sale of corn, to be paid for on the delivery of the last load ; and as the loads were delivered, the corn was placed in a heap with other corn of the buyer, in the presence of both parties. On the delivery of the last lot the buyer failed to pay, and the seller gave notice that he claimed the corn, and brought replevin, which was held to lie,—the court regarding the delivery as conditional, and the plaintiff in no fault for the intermingling of the corn. It is very clear that the intermingling of the sugar does not, as matter of law, make the delivery absolute ; and I think, as matter of fact, it is not sufficient to prove an intention to pass the title absolutely. When the buyer declined to pay the price, the seller at once reclaimed the goods, and so notified the buyer, who did not object to giving up the sale if he could safely do so.

In respect to the question now before us, it is not material for what reason the buyer declined to pay for the goods, although the service of the trustee process might shield him from damages in a suit by the seller for not taking and paying for the goods. For the purposes of this question, it is enough that the buyer did not pay the price, and thus gave the seller a right to reclaim the goods, which he did at once. The goods themselves were exempt from attachment ; and the fact that the trustee process was designed to intercept the price of those goods, could not affect his right to reclaim them when the buyer declined to pay the price.

The exception must therefore be sustained, and the

*Trustee discharged.*