## MERCHANTS' EXCH. BANK v. McGRAW.

(Circuit Court of Appeals, Ninth Circuit. January 15, 1894.)

### No. 110.

1. SALE—DELIVERY—WHEN TITLE PASSES.

By agreement for a sale of goods the sellers were not to part with possession until payment should be made by cashing their draft on the purchasers, with bill of lading attached. The purchasers' bank agreed with them to guaranty payment of the draft on the understanding that the goods and bill of lading were to be its property as security, and wired the sellers' bank that the draft, with bill of lading attached, would be paid, whereupon the latter bank cashed it. *Held*, that the delivery by the sellers of the goods to the railroad company consigned to the purchasers, and taking a bill of lading to that effect, did not pass title to the purchasers, and that the sellers' bank acted as the agent of the purchasers' bank in receiving and transmitting the bill of lading.

2. JUDICIAL NOTICE—STATE STATUTES.

The courts of the United States take judicial notice of the public statutes of the several states.

In Error to the Circuit Court of the United States for the Northern Division of the District of Washington.

At Law. Action by the Merchants' Exchange Bank of Milwaukee, Wis., against John H. McGraw for conversion. Judgment of dismissal. Plaintiff brings error. Reversed.

Lichtenberg, Shepard, Lyon & Denny, (Charles E. Shepard and Sylvester & Scheiber, on the brief,) for plaintiff in error.

Fishback, Elder & Hardin and Henry F. McClure, for defendant in error.

Before McKENNA and GILBERT, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. The plaintiff in error, a banking corporation of Milwaukee, Wis., brought an action for damages against the defendant in error for wrongful conversion of 100 bales of hops. On the 2d day of December, 1890, A. F. Luening & Co., hop dealers of Milwaukee, Wis., had an account with their bank, the plaintiff in error, which account was at that date overdrawn. A. F. Luening, a member of the firm, stated to the cashier of the bank that

his firm had purchased 100 bales of hops, through Kuehn, Metzler & Co., commission dealers at Seattle, Wash., at about 32 cents per pound; that his firm had not the money to pay for the hops, but that the First National Bank of Seattle would advance the purchase money therefor if the plaintiff in error would guaranty the payment of a draft to be drawn by Kuehn, Metzler & Co. on A. F. Luening & Co. for the sum. The bank agreed so to guaranty the draft on the understanding that the hops and the bill of lading thereof should be the property of the bank as security for the guaranty. Thereupon the plaintiff telegraphed on the same day to the First National Bank of Seattle as follows:

"Draft Kuehn, Metzler & Co. on A. F. Luening & Co. for 100 bales hops at 32 cents per pound. Bill of lading and value bill attached will be paid.
"Merchants' Exchange Bank."

On December 8, 1890, Kuehn, Metzler & Co. shipped to A. F. Luening & Co., Milwaukee, as consignees, 100 bales of hops, and took the bill of lading of the same to the First National Bank of Seattle, and there attached it to a draft on A. F. Luening & Co. for the purchase price of the hops, which included the commission of Kuehn, Metzler & Co. The draft was discounted by the First National Bank of Seattle, and was then sent for collection through the bank of the plaintiff in error. On the 8th day of December, however, the hops were attached by the defendant in error, as sheriff, in an action against A. F. Luening & Co., after they had been delivered into the custody of the railroad company at Seattle. Both the plaintiff in error and Luening & Co. were advised of this fact by telegraph after the draft was discounted at Seattle. It was admitted by the plaintiff in error in open court upon the trial that the attachment was levied after the bill of lading was issued, and that it does not appear from the testimony whether the levy was made before or after the negotiation of the draft at the Seattle bank. On December 15, 1890, the draft reached Milwaukee, and was presented to A. F. Luening & Co., but was protested for nonacceptance, the reason for the nonacceptance being that the draft was drawn for more than the agreed price. Upon remitting the overcharge, a second draft in lieu of the first was issued from the Seattle bank on the same day, and was paid on December 20, 1890, by the plaintiff in error, pursuant to its guaranty, but the plaintiff in error has not been reimbursed by A. F. Luening & Co. for the money so paid. Demand was made by the plaintiff in error upon the sheriff for the delivery of the hops, and, upon his refusal, this action was brought. Upon the trial the facts above recited were proven. The court below, upon the motion of defendant, granted a nonsuit at the close of the plaintiff's testimony, and entered a judgment of dismissal, upon the ground that the plaintiff had failed to prove that the attachment was not levied before the draft was cashed at the Seattle bank.

There are two principal questions presented by the record in this case: First. Was there evidence to go to the jury in support of the plaintiff's claim of title to the hops? Second. Was there proof of the incorporation of the plaintiff?

The answer to the first question must depend upon whether or not the title to the hops passed to A. F. Luening & Co. by the delivery of the hops to the railroad company at Seattle, so that between that point of time and the cashing of the draft at the Seattle bank on the same day they were the property of the firm to which they were consigned. It appears from the bill of exceptions that the terms and conditions of the sale had been agreed upon prior to that date, and that the hops had been bought, but were not paid for, and were not yet delivered. The terms of the sale are testified to by A. F. Luening as follows:

"About the 1st or 2d of December, 1890, I duly purchased by wire of Kuehn, Metzler & Co., 100 bales of hops, with the understanding that they were to draw on me at sight, with bill of lading and value bill attached to the draft. They desired the draft cashed at Seattle for some reason."

J. J. Metzler, of the firm of Kuehn, Metzler & Co., testified:

"We had a deal in the month of December, 1890, with A. F. Luening & Co., of Milwaukee, relative to a hundred bales of hops. We bought them on an order from A. F. Luening & Co., and shipped the hops to them. As regards payment, they usually wired us credit from Milwaukee to the First National Bank here,—wired credit to pay for the hops. * * * Our arrangement was made on December 2d by wire, but we did not get the bill of lading out until the 8th. * * * We secured the hops for the purpose of shipment before that arrangement was made, and then we shipped them, and took out that bill of lading."

So far as this evidence goes, (and there was no evidence to contradict it,) it was clearly a part of the agreement and understanding between the vendors and the vendees that the former should not part with their possession of the hops until they should have received payment therefor. In order to obtain payment, arrangement was made for the cashing of a draft to be drawn by the vendors upon the vendees. The draft was to be cashed at the First National Bank of Seattle whenever it should be presented by the vendors with the bill of lading of the hops attached. In order to procure the bill of lading for this purpose, it was necessary to place the hops in charge of the railroad company at Seattle, consigned to A. F. Luening & Co. at Milwaukee. The bill of lading was procured, and presented at the Seattle bank with the draft, and the draft was cashed. Thereby Kuehn, Metzler & Co. were paid. Did the title at any time vest in A. F. Luening & Co.?

The precise point of time at which the title passes upon a sale of goods, such as is disclosed in the record of this case, depends upon the intention of the parties. "The general rule is that, if it is a part of the contract of sale that the seller shall deliver the property sold at some place specified, and receive payment on delivery, title will not pass until such delivery." 1 Benj. Sales, § 325. In Sneathen v. Grubbs, 88 Pa. St. 147, the vendor, a coal dealer, had agreed to load coal upon two of the vendee's barges, and to deliver the coal, with the barges, at Pittsburgh, and receive his pay on delivery. The coal was placed upon the barges, but in transit to Pittsburgh the coal was attached by creditors of the vendor. The vendee brought replevin. The court held that delivery of the coal had not taken place, notwithstanding the loading of the vendee's

barges, since payment had not been made for the coal. In Copland v. Bosquet, 4 Wash. C. C. 588, Washington, J., said:

"Upon the completion of the contract of sale, and before delivery, the property of the thing sold is changed, and passes to the vendee; but, if the sale be for money to be immediately paid or to be paid upon delivery, payment of the price is a condition precedent of the sale, which suspends the completion of the contract until the condition is performed, and prevents the right of the property from passing to the vendee unless the vendor chooses to trust to the personal credit of the vendee."

In Russell v. Minor, 22 Wend. 659, goods had been sold to be paid for by the vendee's note. The goods were delivered, and the note demanded, but refused. The vendor brought replevin. After a review of all the cases, the court held that the delivery was conditional, and that no title passed. To the same effect is Harris v. Smith, 3 Serg. & R. 20. In Leven v. Smith, 1 Denio, 571, the terms of the sale were cash on delivery. Delivery was made, but it was held that no title passed until payment was made by the vendee, or waived by the vendor. To the same effect is Hammett v. Linneman, 48 N. Y. 399. In Stone v. Perry, 60 Me. 48, the court said:

"To establish that the delivery was conditional it is not necessary that the vendor should declare the conditions in express terms at the time of delivery. It is sufficient if the intent of the parties can be inferred from their acts, or the circumstances of the case."

In Paul v. Reed, 52 N. H. 136, the court said:

"The proof tends to show that the sale was for cash, and not on credit; and this is just what would have been intended had no time of payment been stipulated. The case then stands before us as a contract of sale for cash on delivery. In such case the delivery and payment are to be concurrent acts, and therefore, if the goods are put into the possession of the buyer in the expectation that he will immediately pay the price, and he does not do it, the seller is at liberty to regard the delivery as conditional, and may at once reclaim the goods. In such a case the contract of sale is not consummated, and the title does not vest in the buyer."

In Cole v. Berry, 42 N. J. Law, 308, it was said:

"Payment of the contract price is one of the most usual conditions on which the transfer of title depends. It is generally a condition to be performed simultaneously with delivery."

These decisions establish the doctrine that whether or not the title to goods passes upon delivery depends upon the intention of the parties, and that the intent may be inferred from the terms of the sale and the circumstances surrounding the same.

The question of the intention is one of fact, to be ascertained, not by inquiring what was the secret purpose of the vendor, but by considering his acts and declarations. Wigton v. Bowley, 130 Mass. 252; Comer v. Cunningham, 77 N. Y. 391. As said by the court in Bank v. Bangs, 102 Mass. 291:

"It is properly a question of fact for the jury, and must be submitted to them, unless it is plain, as a matter of law, that the evidence will justify a finding but one way."

In the case before the court there is nothing from which it may be inferred that there was an intention that the title to the hops should pass to the purchaser before payment of the purchase price,

save and except the fact that they were delivered by the consignors to the carrier for transportation, consigned to A. F. Luening & Co., and that a bill of lading was made out to that effect. These facts alone would amount to proof prima facie that the consignees were the owners. Their effect as evidence, however, is overcome by the other facts in the case,—by the fact that the goods were to be paid for before delivery, that the purchase money was to be procured by pledge of the goods upon a draft with the bill of lading attached, and by the further fact that the possession of the bill of lading was to be retained by Kuehn, Metzler & Co. until they should receive payment. Bank v. Jones, 4 N. Y. 497; Bank v. Daniels, 47 N. Y. 631; Emery v. Bank, 25 Ohio St. 360; Stollenwerck v. Thacher, 115 Mass. 224.

In Bank v. Jones, supra, the owner of flour at Rochester consigned the same to Jones, in Albany, to whom he was indebted, and obtained a bill of lading of the same. On the same day he discounted at the Bank of Rochester a draft on the consignee, and delivered the bill of lading to the bank as security. The bank forwarded the draft and the bill of lading to its agent at Albany; but the consignee refused to accept the draft, but subsequently obtained possession of the flour, and sold it. The bank brought trover against him, and it was held that the bank was the pledgee, and could maintain the action.

In Emery v. Bank, supra, a produce broker in New York consigned goods to a firm in Cincinnati, and drew upon the consignees against the goods, and discounted the drafts, at the same time pledging with the bank the bill of lading, which had been drawn in favor of the consignees. The consignees received the goods, but refused to accept the drafts, or pay the same, for the reason that the consignor was indebted to them. Upon an action brought by the bank for the proceeds of the goods it was held that it was entitled to recover, notwithstanding that the bill of lading had not been indorsed to it by the consignees.

But it is contended on the part of the defendant that the bill of lading was not in fact delivered to the plaintiff, and that the plaintiff acquired no right or interest in the same, or in the hops represented thereby, until A. F. Luening & Co. made the indorsement to the plaintiff, upon December 20, 1890. There can be no question that the delivery of the bill of lading to the Seattle bank was a delivery to the plaintiff. In paying the draft the Seattle bank obviously relied upon the guaranty of the plaintiff, but it was one of the conditions upon which the guaranty was given that the bill of lading should be delivered with the draft. In receiving the bill of lading from the drawers of the draft, and transmitting the same to the plaintiff, the Seattle bank was acting as the agent of the latter. It was not necessary that the bill of lading should have been indorsed or assigned to the plaintiff. A bill of lading may be transferred in pledge by mere delivery alone, wherever it is the intention of the parties so to transfer it. Railroad Co. v. Phillips, 60 Ill. 190; Peters v. Elliott, 78 Ill. 321; Bank v. Dearborn, 115 Mass. 219; Holmes v. Bailey, 92 Pa. St. 57. It follows from these con-

siderations, and from the authorities above cited, that there was evidence to go to the jury tending to prove that up to the time of the delivery of the bill of lading to the bank at Seattle the title to the hops remained in Kuehn, Metzler & Co., and that by the cashing of the draft, and the delivery of the bill of lading to that bank as the plaintiff's agent, the title passed to the plaintiff.

It is further contended that the nonsuit was properly granted, for the reason that there was no legal proof of the incorporation of the plaintiff. The allegation of the complaint that the plaintiff was incorporated was denied in the answer. The plaintiff offered in evidence a certificate of incorporation, and undertook to prove the competency and sufficiency of the same by reference to the statutes of Wisconsin, but by oversight referred to the wrong sections of the statutes. The reference was intended to be to section 2024, which provides that a certificate, such as that offered in evidence, shall constitute due proof of incorporation. It is sufficient to say in answer to this that it was not necessary to introduce proof of the statutes of Wisconsin. The courts of the United States take judicial notice of all public statutes of the several states of the Union. Owings v. Hull, 9 Pet. 625; Bank v. Francklyn, 120 U. S. 747, 7 Sup. Ct. 757; Lamar v. Micou, 114 U. S. 218, 5 Sup. Ct. 857; Gormley v. Bunyan, 138 U. S. 623, 11 Sup. Ct. 453.

The judgment is reversed, and the cause is remanded for a new trial, with costs to the plaintiff in error.