## DRAPER & DEVLIN *vs.* JONES, sheriff, &c.

Where the memorandum of a contract of sale of merchandise, which was signed
by a broker as the agent of the parties, contained a provision that the notes
to be given by the purchasers should *be made satisfactory to the sellers*; HELD
that the obvious construction of the contract was, that the delivery of the
merchandise and the giving of the notes were to be simultaneous acts, and
each was to be the condition of the other.

Such a contract differs from ordinary contracts where the sale is for cash or
notes; a further act being necessary on the part of the vendors, before the
vendees will have it in their power to fulfill the contract; viz. the notes to
be given are to be satisfactory to the vendors. This provision will render
a sale clearly and unequivocally conditional.

Upon a sale of merchandise, on a credit of four months, upon notes to be made
satisfactory to the sellers, a clerk of the vendors delivered the merchandise,
at the time agreed upon, to the cartman of the vendees, and another clerk
shortly after the delivery called on the vendees with the bill of parcels,
which contained the words, " at four months, for satisfactory security ;" the
vendees asked him what kind of notes would be satisfactory, and he replied,
"just what the bill calls for." He again called upon the vendees, and they
then said they had not fixed upon the paper that they would give ; but they
proposed the note of a third person for the vendors' consideration, who said
they would inquire about him. But before the clerk had time to inquire
again, the vendees had stopped payment, and no note was ever given. The
sheriff having levied upon and taken the merchandise by virtue of an exe-
cution against the purchasers, the vendors brought an action of replevin
against him for the taking. *Held*, that there was evidence enough to go to
the jury, upon the question whether the sale and delivery of the property

Draper *v.* Jones.

was conditional; and that the judge before whom the cause was tried *erred*, in ordering a nonsuit.

The title of the vendors is not divested by the receipt of the goods by the vendees, where it is apparent that such was not the intention of the parties.

Where upon a conditional sale of property, the property is delivered to the purchaser, without a compliance with the condition being insisted on, at the time, yet if it is insisted upon immediately afterwards, when a bill of sale is rendered, and the vendees fully recognize and acknowledge the condition as still subsisting and binding upon them, this is sufficient to uphold the condition.

THIS was an action of replevin, brought in the superior court of the city of New-York, by the plaintiffs against the defendant, who was sheriff of the city and county of New-York, for the taking and detaining twenty barrels of Zante currants. The defendant pleaded *non cepit ;* and the issue thus joined was brought to trial in the month of October, 1847, before OAKLEY, chief justice, and a jury. The plaintiffs proved by John E. Forbes, a produce-broker, that as such broker he sold, for them, a part of a cargo of Zante currants ; they were sold on the 5th of November, 1846, before their arrival, which was about the 25th of the same month. The firm of Wm. Moore & Co. bought 20 barrels of them. The witness produced a writing containing the terms and conditions of the sale ; it was the memorandum of the agreement he made at the time. This was the only paper signed between the parties. The writing was then offered in evidence, but objected to by the defendant's counsel : the court allowed it to be read in evidence, and the defendant's counsel excepted. It was as follows :

"New-York, 5th Nov. 1846.

Sold for account of Messrs. Draper & Devlin, 800 barrels of new crop Zante currants, of merchantable quality, to arrive from Zante per bark Columbia, at 11 cents per pound—4 months for all delivered previous to 2d December next. All delivered on or after that day, 10½ cents—four months. Notes to be made satisfactory to the sellers. If warehoused, buyers to pay the expense, not exceeding one-eighth of one per cent per pound. Optional with buyers to receive the whole, or any part, or none, of their purchases on arrival ; but must receive them immediately after

Draper *v.* Jones.

2d December, proximo, viz." Here followed the names of some twenty purchasers of different lots or parcels, of from 10 to 100 barrels respectively; and amongst them was this entry: "To William Moore & Co. 20 bbls. on terms above." On his cross-examination this witness said, "I had nothing to do with the delivery of the currants."

Samuel Drake, a witness for the plaintiffs, testified that he was a clerk for the plaintiffs, and that he delivered 20 barrels of currants to Wm. Moore & Co.; he had orders from the plaintiffs to deliver 20 barrels; the terms and price he was not aware of; they were delivered from the 3d to 5th December; he delivered to their cartman. He saw Moore, but had no conversation with him. Robert Munson, another of the plaintiffs' witnesses, testified that he was a clerk of the plaintiffs at the time of the sale, and knew of the sale and delivery of these currants. He left a bill with Moore & Co. for them, between the 5th and 7th of December; called on them same day the bill was rendered; they asked what kind of note would be saistfactory. Witness replied, a satisfactory piece of paper, just what the bill calls for. Witness called upon them again; they said they had not yet fixed on what piece of paper they would give; they said they had a running account against a Mr. John Cook, who kept a grocery store on the corner of Eighth-street and Broadway, and that when the account reached $300 or $400, they were in the habit of taking his note for the amount due. They wanted witness to propose Cook's note for the plaintiffs' consideration; he did so. The plaintiffs did not know about Cook, and said they would inquire about him; before witness had time to call again, the firm of Wm. Moore & Co. stopped; the plaintiffs never got any note from them. Under the bill which the witness left with them, was written, "*at four months*, for satisfactory security." Thomas F. Beers, another witness for the plaintiff, testified that he was a deputy sheriff of the defendant Jones; that the goods of Moore & Co. were levied on under the execution then produced in court, and that he, the witness, took possession of the goods after the levy. They were replevied out of his possession under the writ in this cause. The execution under which

the levy was made was then read in evidence; it was a writ of *fi. fa.* issued out of the supreme court, tested the third Monday of October, 1846, returnable in sixty days from the receipt thereof by the sheriff; commanding the sheriff of the city and county of New-York, of the goods and chattels of William Moore and Samuel Bowman, to cause to be made $28,000 of debt, and $24,50 for damages which William H. Howland and Nathan Caswell, plaintiffs, had sustained, &c.  Indorsed was, amongst other things, a direction to " collect $14,024,50," and the receipt of the execution " Dec. 12, 1846, at half past four P. M."  Signed " Wm. Jones, sheriff."  With a receipt for $1268,18 made on the execution.  William Moore, another witness for the plaintiffs, testified that he was one of the firm of Wm. Moore & Co.; himself and Samuel Bowman constituted the firm.  They bought of the plaintiffs 20 barrels of currants.  He knew nothing about the conditions of the sale except what the bill said.  He thought no note was ever given in payment of the bill.  The witness further testified that there was a large indebtedness existing by the firm of which he was a member, to the firm of Howland & Caswell, of which Nathan Caswell, the son-in-law of Bowman, was one of the partners; Caswell was in the habit of coming to the store of Moore & Co.; Caswell and Bowman often talked together; witness thought he had heard Caswell make a remark like this, that the stock was not as full as it ought to be.  That was not his exact words, but to the purport; had frequently heard him say, Go out and fill up your stock; that was the substance of the conversation.  Witness had no intimation before the 12th Dec. 1846, that Caswell was going to enter up judgment upon the bond and warrant of attorney.  These goods were purchased by Bowman.  On his cross-examination the witness said he seldom bought goods.  He did not buy any after he signed the warrant.  He was aware of the purchase of these goods, after the bill came in; they were bought against his desires and wishes; he so expressed himself to the plaintiffs.  He knew there were currants bought from Draper & Devlin, for he saw them in the store, and saw the bill.  The plaintiffs then read in evidence a judgment record, and a warrant of attorney, bear-

Draper *v.* Jones.

ing date 14th August, 1846, authorizing any attorney to appear for William Moore and Samuel Bowman, in any court, and receive a declaration on a bond bearing even date therewith, in the penal sum of $28,000, conditioned for the payment of $14,000 on demand, with interest until paid, at the suit of Wm. H. Howland and Nathan Caswell, and to confess the action. The warrant contained also a consent that an execution issue upon the judgment to be confessed, immediately, without any delay, and waiving any right to the thirty days' stay of execution allowed by law. A cognovit was filed as of October term, 1846, for the said Moore and Bowman, in the suit brought upon the bond and warrant of attorney. The judgment was docketed against them, as of October term, 1846, in favor of Wm. H. Howland and Nathan Caswell, for $28,000 of debt, and $24,50 damages. The plaintiffs rested their case, and the judge nonsuited them; to which they excepted. Their counsel insisted that there was evidence enough to go to the jury, tending to show that the sale and delivery of the said goods were conditional, and that the purchase and obtaining possession of them by Wm. Moore & Co. was fraudulent. But the judge decided that there was not evidence enough to go to the jury upon both or either of said points, and refused to permit the cause to be submitted to the jury. To this the plaintiffs excepted. The cause was brought to this court, on a writ of error to the superior court.

*O. W. Sturtevant,* and *L. R. Marsh,* for the plaintiffs in error, presented the following points. I. There was evidence enough to go to the jury upon, on the question of conditional sale and delivery. *It was a question for the jury—a question of fact.* (8 *Wend.* 247. 23 *Id.* 372. 22 *Id.* 659. 2 *Paige,* 169. 1 *Denio,* 571.) II. There was evidence enough to be submitted to the jury upon the question whether these goods were purchased by Bowman fraudulently, and with the intent not to pay for them. (1 *Hill,* 302. 6 *Id.* 43. 2 *Paige,* 169.) III. A nonsuit proceeds upon the ground that there is *no* evidence for the jury. If there is *any* evidence, the question of its *sufficiency* belongs to the jury. Whether there is *any*

evidence, is a question for the *judge.* (1 *Phil. Ev.* 18. *Doug.* 375. *Cow. & Hill's Notes, part* I. *p.* 58, *note* 54. 6 *Hill,* 208. *Downer* v. *Thompson, opinion of Hopkins, senator, p.* 212.) IV. The purchase was by an *insolvent* firm, and this was evidence for the jury on a question of *intent to pay* for them. V. The sheriff stands in the same place with the purchaser, and with no more rights—having taken the goods on an execution against the fraudulent purchaser. (1 *Hill,* 302.)

*N. B. Blunt,* for the defendant in error. I. There are no exceptions to prejudice the plaintiffs. II. The nonsuit was properly granted. (1.) If replevin was maintainable at all, it should have been in the detinet and not in the cepit. (2.) The delivery to Moore & Co. was absolute, and the legal title in the goods was in them at the time of the sheriff's levy. (8 *Wend.* 247.) (3.) The execution alone protected the sheriff. (4.) At all events the plaintiffs had no right to the goods until they demanded a return. (5.) There was no proof of fraud in the purchase—the proof attempted was inadmissible. (*Conyers* v. *Enniss,* 2 *Mason,* 236.) III. The judgment below should be affirmed. A verdict for the plaintiffs, upon the testimony, would have been set aside as against the weight of evidence, or as contrary to evidence. (*Rudd* v. *Davis,* 3 *Hill,* 287.)

*By the Court,* EDWARDS, J. The memorandum of the contract of sale which was signed by the broker, as the agent of the parties, contains a provision that the notes to be given, shall *be made satisfactory to the sellers.* We think that the obvious construction of this contract, is, that the delivering of the merchandise and the giving of the notes were to be simultaneous acts, and each was to be the condition of the other.

But this contract differs from ordinary contracts, where the sale is for cash or notes, for a further act was necessary on the part of the vendors before the vendees would have it in their power to fulfill the contract—the notes to be given were to be satisfactory to the vendors. This provision rendered the sale clearly and unequivocally conditional. The question then arises,

whether there was an absolute delivery of the property to the vendee, without insisting upon the condition precedent; or, in other words, whether there was a waiver of the condition.

It appears from the contract which was entered into between the parties, that the property in question, which consisted of twenty barrels of currants, was to arrive from Zante, and was to be delivered in about a month after the contract was made. It also appears by the testimony of one of the clerks of the plaintiffs, that he delivered the currants at the time agreed upon, to the cartman of the vendees, pursuant to orders which he had received from his employers; and he further states that he was not aware of the terms of the sale. If the transaction had stopped here, it might be inferred that there was an absolute delivery, and a waiver of the condition of the contract. But another clerk of the plaintiffs testifies that shortly after the delivery, he called on the vendees with the bill of parcels, and that such bill contained the words, "*at four months, for satisfactory security.*" He further states, that in his conversation with the vendees at the time when the bill was rendered, they asked what kind of notes would be satisfactory, and that he replied, "just what the bill calls for." It would seem, then, that the vendors had not intended to make an absolute and unconditional delivery of the property, and that the vendees did not suppose that they had done so. The witness further testifies that he again called upon the vendees, and that they then said, that they had not fixed upon the paper that they would give; but they proposed the note of a person with whom they had a running account, for the vendors' consideration, and they said that they would inquire about him. The witness further says, that before he had time to call again the vendees had stopped payment, and no note was ever given. It seems to me, that the fair inference from this testimony, is, not only that the sale of the property was conditional, but that, although the condition was not insisted upon at the time of the delivery, it was insisted upon immediately afterwards, when the bill was rendered, and that the vendees fully recognized and acknowledged the condition as still subsisting and binding upon them.

Draper *v.* Jones.

We are aware that the tendency of opinion at present, is, to regard a delivery as absolute when no condition is insisted upon, and admitted at the time of delivery, although such may not have been the intention of the vendor. But if there is a clear admission afterwards that the delivery was conditional, we think that both commercial policy, and the common principles of justice, require that the condition should be upheld. It will be remembered, that in this case the vendees throughout acknowledged the condition, and that they submitted the name of a person whose note they proposed to give in performance of the condition; and that while they were in negotiation, a judgment creditor came in and caused the property to be taken under an execution in his favor. In the case of *Whitwell* v. *Vincent,* (4 *Pick.* 449,) the court say, that a delivery is conditional, if enough appear to show that such was the understanding of the parties. In the case of *Keeler* v. *Field,* (1 *Paige,* 312,) where there was a condition similar in many respects to the one in this case, it was held that the title of the vendor was not divested by the receipt of the goods by the vendee—it being apparent that such was not the intention of the parties. (*See also, Leven* v. *Smith,* 1 *Denio,* 571.) In the case before us, it will be observed, that the parties claiming that there was an absolute and unconditional delivery, are not the vendees; and it does not appear that the vendees ever set up any claim inconsistent with a conditional delivery. We think that there was evidence enough to go to the jury, upon the question, whether the sale and delivery of the property in question, was conditional; and that the judge before whom the cause was tried, erred, in ordering a nonsuit.

The judgment of the court below must be reversed, and a *venire de novo* awarded.

[NEW-YORK GENERAL TERM, June 14, 1851. *Edwards, Edmonds* and *Mitchell,* Justices.]