# MERRIMACK,

## JANUARY TERM, A. D. 1857.

## FULLER *v.* BEAN.

A sale is not complete, so as to pass the property, while any thing remains to be done to ascertain the price, nor until the price is paid or secured, unless it may be inferred from the evidence that the parties intended the property should pass at once, and the price be fixed, or payment made at a future time.

If material facts are left in doubt upon the evidence, the question as to the intention of the parties, as to the effect of the sale, should be left to the jury.

An agreement was made at C., in this State, for the sale of certain goods, then stored there, for seventy-five per cent. of the amount at which they should be appraised by a third person, to be paid, half by the buyer's note, and half by the note of another person, and cash. There was no direct evidence of any delivery of the goods at C., or that the terms of the agreement should not be at once complied with. The appraisal of the goods was made the next day, and the goods were taken and removed by an agent of the buyer. The payment by notes and money, and the bill of the goods, were made on a subsequent day at B., in Massachusetts. — *Held*, it could not be assumed that the sale was complete at C., but the evidence, relative to that question, should be submitted to the jury.

TRESPASS *de bonis asportatis*. Plea, the general issue, with a brief statement, that the defendant, being a deputy sheriff, &c., took the goods as the property of one D. G. Fuller, on a writ against him in favor of John Felton, and that the goods were, at the time of taking, the property of said D. G. Fuller.

To prove that Felton was a creditor of D. G. Fuller, the defendant introduced a copy of the judgment in Felton *v.* Fuller,

Fuller v. Bean.

in the suit in which the goods were attached, and the note on which it was founded.

This note the plaintiff contended was void, having been given by said D. G. Fuller to Felton for spirituous liquors sold by Felton to Fuller, in New-Hampshire, contrary to law, he having no license to sell the same. The defendant contended that the sale of the liquors took place in Massachusutts.

It appeared in evidence that the liquors for which the note was given belonged to said Felton, and were kept in a store in Concord, N. H., and were in the care of one S. P. Hoyt, who was selling them on commission for Felton, till they were sold by Felton, either to said D. G. Fuller or to one F. Walker, in the spring of 1852. The plaintiff contended that the liquors were sold to Fuller in New-Hampshire. The defendant contended that they were sold to Walker in Boston. It appeared in evidence that the bill for the goods was made out in the name of Walker, and that the goods were taken to his store in Bow. To prove that the goods were sold to Fuller in New-Hampshire, the plaintiff introduced, as a witness, said D. G. Fuller, who testified " that some time in May, Felton came to Concord, and he and Felton went down to Bow, to see Walker. They came back to Concord, and Felton asked him (Fuller) what he had made up his mind to do on the goods, and asked him what was the best he would do. He told him he would give him 75 per cent. on the appraisal. Felton asked him how he would pay. He told him one half in his note, and the other half in plaintiff's note and money. Felton said he would accept the offer. We agreed on Mr. Neal to appraise the property. I had previously spoken to Walker to have the bill made out in his name, which he did not object to. Mr. Felton then went to Boston. It was two or three days before I brought things round. Felton wrote me to come to Boston and settle up. I did so, and had the bills made in Walker's name. The trade for the goods was made in my house in Concord, after we returned from Bow. The agreement was that I should have the goods by paying 75 per cent. on the dollar, payment as before stated. We

Fuller v. Bean.

agreed on Mr. Neal to appraise the goods. Neal made the invoice next day, as I think. Felton wanted the goods to go in the name of Walker. Walker got the goods, a part of them, that day. He sold some of the goods before they were taken to Bow. This was before I closed up the business in Boston. I call closing up the business paying for the goods. There was no understanding that I should not have the goods till the matter was closed up in Boston. The goods were taken to Bow, at Felton's suggestion, made before the trade. Fuller testified that he paid for the goods in Boston about the 3d day of June following, and took a bill of them in Walker's name. The bill amounted to over $800.

The defendant introduced said Walker and one Jaques, whose testimony tended to prove that the goods were sold by Felton to Walker, and that the sale took place in Boston.

Upon the testimony upon this branch of the case the court instructed the jury that the question was whether the sale was made to Fuller in this State, or to Walker in Boston, and that if they believed the testimony of Fuller, they would find that the sale took place in this State and was made to Fuller ; otherwise, if they believed the testimony of Walker and Jaques.

The defendant asked the court to instruct the jury that " a verbal bargain in New-Hampshire, without delivery, would not pass the property till payment. If payment was made in Boston, in such a state of facts, the sale would be in Boston.

" Also, if the purchaser was to have the goods if he paid for them, and there was no written agreement, although the purchaser should take them before payment, unless it was done by the consent of the seller, no property would pass until the payment.

" Also, unless the act by which the property passed took place in this State, there was no sale in this State."

The court being of opinion that the evidence did not call for any such instructions, declined, and the defendant excepted and moves for a new trial. The jury found a verdict for the plaintiff.

*W. H. Bartlett*, for the defendant.

By directing the jury to find the sale in New-Hampshire, if they believed Fuller, the court in effect instructed them that as *matter of law* the facts stated by him amounted to a sale in New-Hampshire, and that upon those facts they could not legally find otherwise.

In the refusal of instructions, the court in effect ruled that the jury were bound on these facts to find a delivery in New-Hampshire, and could not legally find the contrary, or that the bargain was conditional; that as matter of law they must find that Felton consented to the taking of the goods, and that the act by which the title passed took place in New-Hampshire.

I. It was erroneous to instruct the jury that if they believed Fuller they must find a sale in New-Hampshire; especially as his testimony consisted not of a single fact explicitly stated, but of a long narration, complicated, and not altogether consistent. Nor should the jury have been directed to receive or reject Fuller's testimony in this wholesale way. They should have been left to believe the whole, part or none of his testimony, as they saw fit; and should have been directed, if they found certain facts proved, then, &c. *Tufts* v. *Seabury*, 11 Pick. 140; *Morton* v. *Fairbanks*, 11 Pick. 368.

II. Fuller's testimony, if true, did not show a state of facts on which the jury were bound by law to find a sale in New-Hampshire. No matter how the weight of evidence was, or that the verdict was warranted by it, or was in fact right. If it was competent for the jury upon these facts to find for the defendant, on any point material to such sale, the rulings and instructions were erroneous.

1. Fuller's testimony shows a *contract* to sell, and not an executed sale in New-Hampshire. It was not executed, for there being no memorandum, payment, or formal delivery, the property could not be deemed delivered unless the vendee had the right to take it. *Means* v. *Wilkinson*, 37 Me. 556; *DeFonclear* v. *Shottenkirk*, 3 Johns. 174; Story Contracts 780; 2 Pars. Con. 327; Story Sales, secs. 231, 2, 255, 260, 279; 2

Black. Com. 446. And he could not take them without payment, as no credit was shown. *Clarkson* v. *Carter*, 3 Cow. 84; Story Sales, secs. 5, 225, 274; 2 Kent. Com. 492, 495; Story Con., secs. 796, 803.

The transaction in New-Hampshire then was a mere bargain, which would not transfer the property without delivery. *Head* v. *Goodwin*, 37 Me. 181; *May* v. *Gentry*, 4 Dev. & Bat. 117; *Penniman* v. *Hartshorn*, 13 Mass. 87; *McDonald* v. *Huestis*, 15 Johns. 351; *Seger* v. *Bonaffe*, 2 Barb. S. C. 495; (9 Dig. Con., 389, 4.)

And the delivery must be such as divests the vendor of his lien, and absolutely appropriates the goods to the vendee. — *Means* v. *Wilkinson*, 37 Maine 556; Story on Sales 276; *Messer* v. *Woodman*, 2 Foster 181; Story on Con., secs. 790, 792.

It is said that where the bargain is struck, and nothing remains to be done by the vendor, as between him and the vendee, the property passes without delivery; but this is only where the bargain is binding under the statute of frauds by reason of payment, &c. Story Sales, secs. 279, 280; Chitty Con. (9 Am. Ed.) 394, 5, and n.; 2 Pars. Con. 321, and n.; 2 Black. 44, 7, 8, and n.; 2 Kent 493, 4, 9; *Tempest* v. *Fitzgerald*, 3 Barn. & Ald. 684; *Felton* v. *Fuller*, 9 Foster 128; *Ricker* v. *Cross*, 5 N. H. 570; *Hind* v. *Whitehouse*, 7 East 571, 2; *Shumway* v. *Rutter*, 7 Pick. 57; *Wing* v. *Clark*, 11 Shepley 372; Story Con., sec. 780.

This bargain was invalid under the statute of frauds, unless there was a delivery, for there was no payment or memorandum. Comp. Stat. 549, sec. 10.

2. If there was no credit *expressly given*, or delivery, the payment was a condition precedent to the vesting of the property. *Phillips* v. *Hunnewell*, 4 Greenl. 379; *Mires* v. *Solebay*, 2 Mod. 243; *Conway* v. *Bush*, 4 Barb. 564; *Tempest* v. *Fitzgerald*, 3 B. & Ald. 684; *Powers* v. *Bradlee*, 9 G. & J. 220; *Wood* v. *Shaw*, 7 Wend. 406; *Hanson* v. *May*, 6 East 625; *Russell* v. *Messer*, 22 Wend. 659; *Smith* v. *Levin*, 1 Denio 571; *Acker* v. *Campbell*, 23 Wend. 372; *Palmer* v. *Hand*, 13 Johns. 434;

*Houdlette* v. *Tallman*, 2 Shep. 400; *Chapman* v. *Lathrop*, 6 Cow. 110; Hilliard on Sales 3; Com. Dig., Agreement, B, 3; 2 Kent. 496, 7; 2 Black. 447; Chitty on Cont. (9 Am. Ed.) 380, 395, and note.

For else it is no valid contract. It is immaterial " that there was no understanding that Fuller was not to have the goods till payment," for unless there was an express understanding *that he was to have them without payment*, it would still be a condition precedent.

Also, the terms of the bargain expressly made payment in the agreed mode a condition precedent, for Fuller was to have the goods *by paying*, &c. *Mires* v. *Solebay*, 2 Mod. 243; *Sands* v. *McLellan*, 6 Cowen 582; *Thayer* v. *Thayer*, 7 Pick. 213; *Walter* v. *Willis*, 1 Dall. 354; *Burris* v. *Gooch*, 5 Rich. 1; (14 D. 458, 18;) *Fairbanks* v. *Dow*, 6 N. H. 266; *Dana* v. *King*, 2 Pick. 155; *Hunt* v. *Livermore*, 5 Pick. 395; 1 Saund. Pl. and Ev. 122, 3, 7.

And till performance of such a condition the property does not pass. Story Sales, sec. 313; Story Con., sec. 804; *Pettis* v. *Kellogg*, 7 Cush. 461; 2 Kent. Com. 496, 7; *Whitwell* v. *Vincent*, 4 Pick. 449; *Messer* v. *Woodman*, 2 Foster 181; *Barrett* v. *Pritchard*, 2 Pick. 516; *Luey* v. *Bundy*, 9 N. H. 298; *Riddle* v. *Varnum*, 20 Pick. 284; *Draper* v. *Jones*, 11 Barb. 263; *Reed* v. *Upton*, 10 Pick. 525; *Marston* v. *Baldwin*, 17 Mass. 610.

If any part of Fuller's testimony was inconsistent with this, it should have been left to the jury to say what the bargain was. *Titus* v. *Ash*, 4 Foster 329.

3. Upon the facts stated by Fuller the jury were not bound to find a delivery. Fuller testifies to no delivery or assent of Felton to the removal, but merely says that the terms of the sale were agreed on by the parties, and Neal selected to make the appraisal, which was to determine the price; that Felton *then* went to Boston; that Neal took the invoice next day, and after that the goods were taken to Bow. These are all the material facts he stated, and so far from amounting to a delivery,

they are at most but evidence, and from them the fair inference is that there was no delivery, for Felton appears to have been absent, and is not shown to have known of the removal, or to have assented to it ; and, so far from the condition being performed, the price was not even ascertained when he left. Hoyt does not appear to have had authority to make delivery. On the contrary, his agency was for a different purpose ; nor does he appear to have made delivery, or to have known any thing of the matter.

It is no answer to say that a trespass is not to be presumed. If A. shows B. carrying away A's goods from his possession, it is no answer that a trespass is not to be presumed, for it is shown. So here, the goods were Felton's and in his possession, and they did not pass by the *bargain*, and Fuller had no right to take them unless there was a delivery. His taking them, then, was wrongful, and the trespass was *proved ;* unless it be answered there was a delivery, which is a manifest begging of the question, for that is the very matter on trial. No *presumption*, then, is required, for the fact is shown ; and if Fuller had a justification, it is for *him* to show it.

The selection of Neal as appraiser was no delivery, nor was his appraisal, which was only to ascertain the price. *Felton* v. *Fuller*, 9 Foster 128. Although it might ascertain the price and the goods, yet a bargain, *valid under the statute of frauds*, was also essential to pass the property, and no such bargain then existed. Until the transaction in Boston, neither was bound. Comp. Stat., p. 459, sec. 10.

Felton's suggestion, made before the trade, was not part of the trade, and of no efficacy. It had no reference to this or any particular removal of the goods, and was but mere advice to Fuller to take the goods to Bow, in case they should be sold to him. When it was made, there was no bargain between them, and it was not again referred to. Fuller was not bound by it to take the goods there, nor could he do so lawfully till he complied with the express terms of the subsequent bargain by paying, &c. It was as much a consent to take them *then*, before

the bargain was made, as it was to take them before it was executed. And the absurdity of this is its own answer. Fuller himself seems to have understood that payment was a condition precedent, and that there had been no delivery ; for, speaking of " the trade," he says, " that it was some days before he closed up the business ;" that is, " paid for the goods at Boston." He could not have meant the closing of the whole transaction, for that has not yet been done, as one note is still unpaid. He could only have meant the completion of the sale, and at that time in Boston he first received a bill of the goods.

Upon the evidence, then, it was clearly competent for the jury to have found that there was no delivery prior to the payment ; and if the intent of the parties, as to the delivery, had been doubtful, the question should have been left to a jury. *Handlette* v. *Tallman*, 2 Shep. 403. Then the question is not if the finding of the jury was proper, but whether, in law, they were bound to find a delivery, and whether it was incompetent for them to find otherwise.

The burden of proof was on the plaintiff to show a delivery, as necessary to pass the property under the statute of frauds, and also as a waiver of the condition precedent ; yet the court refused to direct the attention of the jury to the question, whether there was a delivery in New-Hampshire, or to allow them to pass upon it.

If, then, the jury had been allowed, as they should have been, to find that there was no delivery in New-Hampshire, and had so found, as was competent for them to do upon the evidence, it would then follow that the property passed by the payment in the agreed mode in Boston. *Anon.*, 12 Mod. 334 ; *Barrett* v. *Goddard*, 3 Mason 111 ; or by the giving the bill of sale there, either of which would give to the verbal bargain the validity it lacked till then, and the property being ascertained, nothing would have remained to be done by Felton, and the title would pass by the transactions in Boston. *Felton* v. *Fuller*, 9 Foster 128.

The transactions in New-Hampshire not passing the property,

Fuller v. Bean.

would not have amounted to a sale, but would have been a mere contract to sell, (and that invalid,) which is not prohibited. *Woolsey* v. *Bailey*, 7 Foster 217; *Sartwell* v. *Hughes*, 1 Curtis 244; *Smith* v. *Smith*, 7 Foster 252.

Indeed, to fall within the prohibition, the transaction must have been a valid sale under the statute of frauds. *Sartwell* v. *Hughes*, 1 Curtis 244; Story on Sales, sec. 502; Story on Con., sec. 793; 2 Saund. Pl. & Ev. 536–8; Oliver Prec. 114, 115; *Newmarket Co.* v. *Harvey*, 3 Foster 395.

*H. A. Bellows*, for the plaintiff.

The charge of the judge that if they believed the testimony of Fuller, they would find that the sale took place in this State, and was made to Fuller, and otherwise if they believed the testimony of Walker and Jaques, was correct.

The statements of Fuller were sufficiently explicit to establish a sale, perfected by a delivery; and, if true, the jury could not find otherwise.

In the case in 11 Pick., cited by the defendant's counsel, the statements might all be true and still no sale on six months credit, and the jury might properly have found the other way. But not so here. Fuller states distinctly a contract of sale, the terms of payment, that he took possession of the goods, and that soon after he was called upon by Felton to settle up, and that he went to Boston and paid and closed up the business. This constituted a sale in New-Hampshire, perfected by delivery.

Fuller took possession in pursuance of the suggestion of Felton, made before the trade was closed, received the possession from Felton's agent, and it is to be presumed that it was with the assent of Felton. And, besides, Felton afterwards assented to it by receiving the pay, the goods then being in Fuller's possession. The goods were in Concord, the contract of sale made there, the goods to be delivered there, and were delivered there. And although the price was paid in Massachusetts, yet the sale was made in New-Hampshire, and came within the prohibition of our statute.

Fuller v. Bean.

In *Smith* v. *Godfrey*, 8 Foster 383, it is held that if goods are sold, to be delivered in the place where the sale is prohibited, the purchaser will not be held liable, the sale would not be complete in the foreign State, and the contract, being repugnant to the law of the country which made the prohibition, could not there be enforced.

It appeared also that the case went upon the ground that the goods were sold either to Fuller in New-Hampshire, or to Walker in Boston, and upon that point, which was the great point, there was conflicting evidence, and the charge of the judge was made in that view, and was rather a statement of the position of the case than instructions as to the law.

As to the first branch of the instructions requested, we say that there was no occasion for it, because there was in fact a delivery; and, besides a verbal bargain might pass the property without delivery ; and before payment.   Nor would payment in Boston make the sale in Boston.

BELL, J.*   The court charged the jury that if they believed the testimony of Fuller, they would find that the sale took place at Concord, and was made to Fuller.   The question then is, whether Fuller's testimony, if credited, proved a sale complete from Felton to him at Concord, so that the property of the goods then passed.   If so, the charge was right ; but if the testimony only tends to prove such sale, as a matter of inference from facts and circumstances to be weighed by the jury, and in relation to which different persons might reasonably arrive at different results, the evidence should have been submitted to the jury.   Where the facts are proved, and are not controverted, it is a question of law whether they show a sale.   *Handlette* v. *Tallman*, 14 Me. (2 Shep.) 403 ; *Burrows* v. *Stebbins*, 26 Vt. (3 Dean.) 659.   But where material facts are left in doubt, the question is to be decided by the jury under suitable instructions as to the law.   *Riddle* v. *Varnum*, 20 Pick. 283 ; *George* v.

* PERLEY, C. J., and FOWLER, J., having been counsel, do not sit.

---

Fuller *v.* Bean.

---

*Stubbs,* 26 Me. (13 Shep.) 250 ; *Draper* v. *Jones,* 11 Barb.
269 ; *Smith* v. *Dennie,* 6 Pick. 266 ; *Bishop* v. *Shillito,* 2 B &
A. 329, n.

If a sale is not complete, if anything remains to be done, as
between buyer and seller before the goods are to be delivered, a
present right of property does not attach in the buyer. If the
goods are sold by number, weight, or measure, the sale is *prima
facie* not complete till their quantity is ascertained, and if they
are mixed with others, not until they are separated and desig-
nated. *Warren* v. *Buckminster,* 4 Foster 336, and the author-
ities there cited. The cases here enumerated are but examples
of incomplete sales ; and there are many other cases, where, as
there is the same reason, the same rule of law applies. The
quality of the articles sold may be left to be ascertained, as the
flavor of wines, (an example put in the (Digest, D. 188, 6, 4,
5, 6.) Hun. ad Pand., pt. 3, sec. 304,) the proof of spirits, or
the merchantable quality of fish. *Outwater* v. *Dodge,* 7 Cowen
87. If it is agreed that a writing be made, as if notes are to
be made satisfactory to the seller — *Draper* v. *Jones,* 11 Barb.
263 ; or if the price is to be secured by notes indorsed by par-
ticular persons — *Keller* v. *Field,* 1 Paige 352 ; *Barrett* v.
*Pritchard,* 2 Pick. 1512 ; *Bishop* v. *Shillito,* 2 B. & A. 329,
n ; the sale is incomplete until the writing is signed, as it is in
conditional sales until the condition is performed. *Hun. ad
Pand.,* pt. 3, sec. 303. The principle that if any condition pre-
cedent is not performed or waived, the sale is not complete, is
settled at common law. 2 Kent. Com. 497 ; *Alexander* v.
*Gardner,* 1 Bing. 671 ; *Hanson* v. *Meyer,* 6 East 614 ; *Bar-
rett* v. *Pritchard,* 2 Pick. 512 ; *Maxwell* v. *Briggs,* 17 Vt. 176 ;
*Luey* v. *Bundy,* 9 N. H. 298 ; *Whitwell* v. *Vincent,* 4 Pick.
449 ; Blackb. on Sales 167 ; Com. Dig., Condition, B. 13.
Where, by the terms of the contract, the delivery to the vendee
is to be at another place, to which the vendor is to transport the
articles at his own expense, the title does not pass till delivery.
*Evans* v. *Harris,* 19 Barb. 427.

In some of the cases we find at common law the language

used is capable of being understood as importing that if an act remains to be done between the parties, it must be an act to be done by the seller, and one necessary to designate and identify the goods to be sold, and not an act to be done by the buyer, or merely to ascertain the price to be paid, in order to render the sale imperfect and to prevent the property from passing. *Tarling* v. *Baxter*, 6 B. & C. 360 ; *Whitehouse* v. *Frost*, 12 East 613 ; *Hanson* v. *Meyer*, 6 East 614 ; *Rugg* v. *Mineu*, 11 East 209 ; *Simmons* v. *Swift*, 5 B. & C. 857 ; *Wallace* v. *Breeds*, 13 East 522 ; *Macomber* v. *Parker*, 13 Pick. 183.

But we think there is no such limitation of the rule, and that it is indifferent whether the act to be done to render the sale complete, is to be done by the buyer, or by the seller, or by a third person ; and that it is equally indifferent whether it is to be done to ascertain the goods to be sold by their designation or measurement, or their quality, by the buyer, or the public inspector ; 7 Cow. 87 ; or merely to ascertain the price to be paid by the appraisal of a third person, or by counting, weighing, or the like ; or to do any other act necessary to enable the property to pass in conformity to the agreement, such as might be the payment of duties on goods imported, or their transportation to a different place.

As it regards the price, a material point in this case, the rule is distinctly laid down in the civil law. Thus Huneceius says, (ad Pand., lib. 6, sec. 302,) the risk and profit of the property does not pass until it appears what is sold, its quality, quantity, and *price ;* and in the Digest (18, 6, 8,) it is said, *si id quod venierit appareat, quid, quale, quantum sit, et pretium et pure veniit perfecta est emptio ;* and to the same point is Pothier (*de Vinte*,) p. 4, sec. 309.

This rule is thus laid down in *Rapelye* v. *Mackie*, 6 Cow. 253 : " The principle that runs through all the cases is, that when something remains to be done, as between buyer and seller, or for the purpose of ascertaining either the quantity or *price*, there is no delivery." To the same point is the case of *Outwater* v. *Dodge*, 7 Cowen 87, and *Macomber* v. *Parker*, 13 Pick. 183.

---

---

Brown on Sale, 44, is there quoted to the same point : " Where anything remains to be done to the goods, for the purpose of ascertaining *the price*, as by measuring, weighing, or testing the goods, the performance of those things shall be a condition precedent to the transfer of the property, although the individual goods be ascertained, and they are in the state in which they ought to be accepted." Blackb. on Sale 152.

With this view agree many cases where the numbering, weighing and measuring required to make the sale effectual, were not necessary to identify the articles sold, but merely to ascertain the price. *Simmons* v. *Swift*, 6 B. & C. 857 ; *Hanson* v. *Meyer*, 6 East 614 ; *Tagury* v. *Furnell*, 2 Camp. 240 ; *Logan* v. *LeMesurier*, 6 Moor P. C. Cases 110 ; Chitt. Con. 112.

Though by the general rule of law the sale is not complete if any thing remains to be done between the parties, yet they may agree, either expressly or tacitly, to change this, and that the title to the property shall pass at once. *Conditio quæ initio contractus dicta est, postea alia pactione immutari potest.* Dig. 18, 1, 6. *Alexander* v. *Gardner*, 1 Bing. 671 ; 2 Kent. Com. 496 ; Blackb. on Sale 160. Thus, though it is implied that a sale is for ready money unless otherwise agreed, yet the condition to pay immediately may be waived, and the goods at once passed to the buyer. 2 Kent. Com. 496 ; *Schindler* v. *Houston*, 1 Denio 51 ; *Mixer* v. *Cook*, 31 Me. (1 Red.,) 340 ; Blackb. Sale 147 ; writings may be agreed to be made, but this stipulation may be changed or waived. *Draper* v. *Jones*, 11 Barb. 209. Measures to ascertain quantity or price may be agreed on, but tacitly waived, or expressly postponed, or dispensed with. *Macomber* v. *Parker*, 13 Pick. 183.

In the language of Lord *Brougham,* (*Logan* v. *LeMesurier*, 6 Moor P. C. Cases 116 : ) " To constitute a sale which shall immediately pass the property, it is necessary that the thing sold should be certain, should be ascertained in the first instance, and that there should be a price either ascertained or ascertainable. But the parties may buy or sell a given thing, nothing remaining to be done for ascertaining the specific thing itself, but the price

to be afterwards ascertained in the manner fixed by the contract of sale, or upon a *quantum valeat;* or they may agree that the sale shall be complete and the property pass in the specific thing, chattel, or other goods, although the delivery of possession is postponed, and although nothing shall remain to be done by the seller before the delivery ; or they may agree that nothing remains to be done for ascertaining the thing sold, yet that the sale shall not be complete and the property shall not pass, till something is done to ascertain the amount of the price. The question must always be what was the intention of the parties in this respect, and that is of course to be collected from the terms of the contract. If those terms do not show an intention of immediately passing the property, until something is done by the seller before delivery of possession, then the sale cannot be deemed perfected, and the property does not pass until that thing is done." Blackb. Sales 121, 147.

The rule may therefore be laid down as in *Stone* v. *Peacock,* 35 Me. (5 Red.) 388. Where some act remains to be done in relation to the property which is the subject of sale, and there is no evidence to show any intention of the parties to make an absolute and complete sale, the performance of such act is a pre-requisite to a consummation of the contract, and until it is performed the property does not pass to the vendee. *Riddle* v. *Varnum,* 20 Pick. 280 ; *Draper* v. *Jones,* 11 Barb. 263 ; *Keller* v. *Field,* 1 Paige 312 ; *Whitwell* v. *Vincent,* 4 Pick. 449 ; Blackb. Sale 120.

There has been an inclination in some cases to regard a delivery as absolute when no condition is insisted on, and to consider such a delivery as a waiver of the condition. *Supin* v. *Marie,* 6 Wend. 77 ; *Chapman* v. *Lathrop,* 6 Cowen 110 ; *McCarty* v. *Vickery,* 12 Johns. 348 ; *Draper* v. *Jones,* 11 Barb. 263.

But this we think must depend on the intent of the parties at the time, to be ascertained from all their language and conduct, and not from the single fact of the delivery. *Furniss* v. *Hone,* 8 Wend. 256 ; *Smith* v. *Dennie,* 6 Pick. 266 ; *Smith* v. *Lynes,*

1 Seld. 44.   The condition for security is not necessarily waived by mere delivery without exacting performance, if the delivery is conditional.   *Hussey* v. *Thornton*, 4 Mass. 407 ; and an express declaration is not necessary that the delivery is conditional.   8 Wend. 261 ; *Whitwell* v. *Vincent*, 4 Pick. 449 ; *Keeler* v. *Freeman*, 1 Paige 312 ; 4 Mass. 405 ; *Mason* v. *Sickbarrow*, 1 H. B. 362 ; *Palmer* v. *Hand*, 13 Johns. 434 ; Story Con. 508.

A mere assumption of ownership or control by the purchaser will not be sufficient evidence of a delivery, without proof of consent or acquiescence.   Even then it affords merely a presumption of delivery, which may be repelled by evidence that the title remained in the vendor.   *Tompkins* v. *Haile*, 3 Wend. 406 ; *Williams* v. *Allen*, 10 Hump. 337.

Upon comparing the facts of the case with the principles thus stated, it appears that the price of the goods sold was not agreed upon by the parties.   The bargain was that Neale should appraise the goods, and that Fuller should pay for them at the rate of seventy-five per cent. of the appraisal, one half by his own note, and the other half by J. G. Fuller's note and cash.

Now a price is essential to a contract of sale.   *Nulla emptio sine pretio esse potest ;* though if the price can be made certain it is sufficient.   Just. Inst. 3, 23 ; 4 Kent's Com. 468, 477 ; Poth de Vente, p. 1, sec. 1, p. 3.   When the parties then separated, and Felton returned to Boston, the sale was incomplete.   It was at that time contingent, whether Neal would make an appraisal, without which there would be no sale.   *Sin autem ille qui nominatus est vel noluerit vel non potuerit pretium definire tunc pro nihilo esse venditionem.*   Inst. 3, 23 ; Poth de Vente, pt. 1, art. 2, sec. 2.   That appraisal remained to be made.   It was an act to be done before the property could pass to Fuller, unless it could be fairly inferred from the evidence relative to the agreement that it was the understanding of the parties that the property should nevertheless pass at once.

By the contract the goods were to be paid for by notes and money, as the parties had agreed, and the delivery of the notes,

which could not be made till after the appraisal, should be regarded as a condition precedent, to be performed before the sale would be complete, unless some evidence appeared from which it might be justly inferred that credit was given for the delivery of these notes, or that the understanding of the parties was that the notes should be given at a future day.

On both these grounds the charge seems to us to have been incorrect, because the testimony of Fuller did not necessarily prove a sale complete. It contained facts and circumstances, from which a jury might have inferred a complete and perfect sale ; because, notwithstanding the uncertainty as to the price, and the condition as to the security to be given for it, the jury might have found that it was the understanding of the parties that credit was given as to these things, the conditions were to be waived, so that the property should pass at once.

The jury might infer, from the meagre account of what was said and done by the parties, that the sale was complete at Concord, that Walker might take the goods at once, and that Felton was not to retain an interest in the goods till he received the notes agreed for, but was to rely on Fuller's engagement to furnish the notes, when their amount should be ascertained. On the other hand, the jury might believe, especially considering the illegality of such contracts in this State, that Felton did not intend to part with his merchandise till he got his pay, and that he neither delivered the goods, nor consented to their delivery, till he received the notes agreed on at Boston, and made a bill to Walker.

In our opinion the question as to this matter should have been submitted to the jury, and on this ground there must be a new trial.

The first instruction requested to be given to the jury was not such as the court could properly give, and the others, though they seem correct, were immaterial.