## JAMES LEES AND EDWARD WALLER v. THOMAS RICHARDSON AND OTHERS.

On a cash sale to a solvent buyer, where there is no fraud used to obtain possession, but the goods are voluntarily delivered in the usual and ordinary course of business, the title passes to the buyer by the act of delivery, and he has, with the possession, the right of immediate disposition, unless there are circumstances clearly showing that it was the intent of the parties that no title should pass until the cash was paid.

The mere fact that the sale was for cash, will not, of itself, be sufficient to warrant the legal inference that the delivery was conditional, and that no title was intended to pass to the buyer until the cash was paid.

As a general rule, on a sale of chattels, where no time is fixed for payment, payment and delivery are to be simultaneous acts, and the seller is not bound to deliver until payment is tendered.

But this rule is not applicable to the case of a sale of a large quantity of merchandise, the delivery of which may occupy considerable time, and in which some period must also intervene to enable the buyer to ascertain the correctness of the weight, to adjust the tare upon the different packages, and generally to ascertain the quality and condition of the merchandise received.

Where a custom is shown of allowing a buyer of merchandise a certain time to examine the quantity and condition of the goods delivered, during which no interest is charged on the purchase money, and the buyer is allowed to sell the merchandise freely, as well before as after payment, the parties must be regarded as contracting with reference to this usage; and, in such a case, though the merchandise be sold for cash, the title will pass upon delivery, although the cash is not paid.

Full effect should be given by the court to any commercial usage which recognizes the right of property as in the buyer, where it is voluntarily delivered to him, untainted by fraud and untrammeled by conditions, whether it be what is termed a cash sale, or a sale upon time.

Lees v. Richardson.

The reasonableness and propriety of such a usage considered.

If a sale is conditional, the seller is bound to exact the performance of the condition, either at the time of the delivery, or very shortly thereafter; or he will be deemed to have waived it.

Upon a cash sale, the acceptance of a part of the purchase money is a waiver of the right to reclaim the goods, and perfects the buyer's title even though the delivery was conditional.

L. & W. sold to F., on the 1st of March, 312 tierces of lard for cash, which they proceeded at once to deliver to him, and which he proceeded to sell again to others. On the 5th of March, having 50 tierces remaining, he delivered 44 of them, together with another lot, all being included in one invoice, to R., as collateral to secure the repayment of certain advances. On the same day, L. & W. presented their bill to F. for payment, and, on the 9th or 10th, F. made them a part payment on account. A few days later, he gave them his check, post dated, for a part of the balance, but before its maturity he failed, and made a general assignment, for the benefit of his creditors, to L. In that assignment the claim of L. & W. was placed in a second class of preferred creditors, and 24 per cent. was thereafter paid them under the assignment. It appears that, by usage in the city of New York, from a week to ten days is given to buyers, in the case of cash sales, to examine and weigh the merchandise, &c., during which time it is customary for them to treat with and freely sell it, as well before as after payment. *Held*,

I. That the parties must be regarded as contracting with reference to this usage, and must be governed by it.

II. That the sale could not be regarded as conditional, but that the ownership and title passed to F. at the time of delivery.

III. That if it were otherwise, the acts of L. & W. in accepting a part payment and in taking the per centage under the assignment, and the act of L. in accepting the trust reposed in him by the assignment, were inconsistent with the idea that the sale was a conditional one, and waived any right to reclamation, even if otherwise they had possessed such right.

The cases upon the question, "What constitutes a conditional, and what an absolute sale?" collated and examined.

APPEAL by plaintiffs from a judgment entered on the report of a referee. This action was brought to recover the sum of $1,320 and interest, the value of forty-four tierces of lard alleged to belong to the plaintiffs, and to be unlawfully detained from them by the defendants. The cause was tried before a referee, who found and reported to the court the facts in the case, with his conclusions as follows:

"I do find that on the 1st day of March, 1856, the plaintiffs sold to one Fisher A. Fisher 312 tierces of lard, at 10½ cents per

pound, amounting, in the whole, to $9,378.91, for cash; that the lard was delivered by the plaintiffs, to Fisher A. Fisher, on one of the wharves of the city of New York, where the same was weighed, and that such delivery was completed on the evening of the 4th of March, 1856; that, on the morning of the next day, a bill of parcels of the lard, showing the weight of the several tierces, the tares upon the same, the aggregate weight, the price per pound, and the sum total due for the lard, and stating that the terms of the sale were cash, was presented by the plaintiffs to Fisher A. Fisher. That on the 7th day of March, 1856, the plaintiffs demanded payment of said bills, which not being obtained, a similar demand was made on the 8th day of March, 1856. That, the amount still remaining unpaid, the plaintiffs, a day or two afterwards, made another demand upon Fisher for the same, when they received from him $2,000 on account of said bills; and that the next day Fisher A. Fisher gave to the plaintiffs, upon their demand for the remainder due them, his check for $5,000, which was not paid on presentment, and still remains due. That the plaintiffs, after the delivery of the lard, did not on any occasion demand from Fisher A. Fisher that the lard should be returned to them. That the said Fisher A. Fisher, on the 5th day of March, 1856, for a valuable consideration, before that time had and received by him from the defendants in this action, duly transferred to them forty-four tierces of the lard, the subject matter of this action. That the said Fisher A. Fisher failed in business, and suspended his payments on the 11th day of March, 1856, and on the same day made an assignment of all his property to James Lees, one of the plaintiffs in this action, preferring the plaintiffs, for the amount of the purchase price of the said 312 tierces of lard, in the second class of preferred creditors under the assignment; and that said assignment was executed as well by Fisher A. Fisher as by the said James Lees. That the said Fisher A. Fisher was not, at the time of the purchase of the lard, aware of his being insolvent, and that he bought the lard with the expectation and intention of paying for the same.

"I further find, as a conclusion of fact in this case, that the delivery of the 312 tierces of lard, by the plaintiffs, to Fisher A. Fisher, was conditional, upon the payment of cash; and further, that the *plaintiffs waived the said condition*, and that the *said de-livery became absolute*, whereby the plaintiffs parted with the title and ownership of the said forty-four tierces of lard to the said Fisher A. Fisher, and to the defendants claiming under him. I further find, as a conclusion of fact, that the purchase was not made by the said Fisher A. Fisher with any fraudulent intent, or with any preconceived design of not paying for the lard."

Upon these facts, the referee reported in favor of the defendants; and, judgment having been perfected in their favor, the plaintiffs appealed.

*Luther R. Marsh*, for the appellants.

I. The sale was for cash. This is expressly sworn to, and is not denied.

II. The delivery was in pursuance of the contract, and on the same conditions. There was no waiver of the terms of sale. The delivery of the bill the next day, expressing that it was for cash, and the immediate and persistent pursuit of the cash, show (as well as the testimony of the purchaser himself) that there was no intent on the part of the plaintiffs to waive that condition. The intent of the parties is the thing that controls, in such cases. The following are some of the principal authorities to show that the intention of the parties governs, as to whether the delivery waives the condition of sale. *Furniss* v. *Holt*, 8 Wend. 256, 261–2; *Russell* v. *Minor*, 22 Wend. 664; *Acker* v. *Campbell*, 23 Wend. 372; *Leven* v. *Smith*, 1 Denio, 571; *Draper* v. *Jones*, 11 Barb. 263; *Van Neste* v. *Conover*, 5 How. Pr. R. 148; *Smith* v. *Lynes*, 1 Seld. 41; reversing *S. C.*, 2 Sandf. 203; *Aguirre* v. *Allen*, 10 Barb. 74.

III. If the sale was a conditional one for cash, and the delivery also conditional, then the property continued the plaintiff's until the payment of the cash; and, until that time, the purchaser, or any one standing in his place, held it as trustee or bailee of the

plaintiff.  *Herring* v. *Hoppock*, 15 N. Y. R. (Smith) 409, 411, 412, 414.

IV. It is not necessary, in this case, to consider what would have been the effect of a sale by Fisher to a *bona fide* purchaser without notice, and for a consideration paid at the time.  It is enough that this is not such a case.  The defendants stand in no better situation than Fisher would have done.  They paid noth ing for the lard.  They were not purchasers for value.  They took it as security merely to sell for Fisher's account, and, unless reimbursed, to apply the proceeds to a debt for previous advances —for advances made before the sale of the lard by the plaintiffs to Fisher.  All that can be said for them is, that they stand in the same position as Fisher.  *Haggerty* v. *Palmer*, 6 Johns. Ch. R. 437; *Keeler* v. *Field*, 1 Paige, 312; *Ash* v. *Putnam*, 1 Hill, 307; *Acker* v. *Campbell*, 23 Wend. 372; *Herring* v. *Hoppock*, 15 N. Y. R. (Smith) 409, 412.

V. Mr. Fisher was insolvent at the time of the purchase.  He knew that his affairs were very uncertain, and he, immediately on getting this lard, and before payment, turns it over to defend- ants as security for their previous advances.  This was fraudu- lent.  *Keeler* v. *Field*, 1 Paige, 312.

*Martin & Smiths*, for the respondents.

I. There was no fraud in the purchase by Fisher, so as to enti- tle the plaintiffs to reclaim the lard on that account.  He bought it in good faith, and intended to pay for it.  The referee so finds as matter of fact, and his finding is sustained by the evidence. See *Lupin* v. *Marie*, 6 Wend. 77.

II. The title passed to Fisher by the delivery, so as to give him authority to pledge the property to the defendants.  *Smith* v. *Lynes*, 1 Seld. 42.  1. The proof was conclusive that no usage existed such as that claimed by the plaintiffs; but, on the con- trary, it was proved that it was the usage to dispose of the prop- erty as freely before payment as after.

III. The right of reclamation, if any existed, was waived by the plaintiffs.  1. After the delivery, and after several days had

passed, Fisher paid, and the plaintiffs received, $2,000 on account. 2. Fisher made an assignment, preferring the claim of the plaintiffs, to James Lees, one of the plaintiffs, and he afterwards paid to the plaintiffs, and they received, a dividend of 24 per cent. on their claim.

By the Court, DALY, First Judge.—The plaintiffs in this case, Lees & Waller, sold to one Fisher 312 tierces of lard at 10½ cents per pound, amounting to the sum of $9,378.91, for cash. The lard, at the time of the sale, which was on the 17th of March, 1856, was in a ship lying at one of the wharves in this city. The lard was landed from the ship, weighed by the plaintiffs upon the wharf, and then delivered to Fisher, who, having sold 262 tierces of it, delivered the amount sold by him from the wharf to the various parties to whom he had sold it. The delivery to Fisher was completed on the 4th of March, that is, within three days after the sale; and of the fifty tierces remaining, after the 'sale by him of the 262 as above stated, six were sent to his store, and the remaining forty-four tierces were delivered by Fisher, together with another lot of lard, all being included in one invoice, to the defendants on the 5th of March, 1856, in pursuance of an agreement previously made by him with them, by which they advanced to him $10,000 in cash, and $10,000 in their paper, in consideration of his depositing with them lard as security, to be sold by them on his account unless they were reimbursed—in pursuance of which agreement Fisher, at the time this arrangement was entered into, and afterwards, placed in their hands lard to the amount of nearly $24,000 at the invoice price, of which lard, so deposited, these forty-four tierces formed a part. This deposit of the forty-four tierces was made, as suggested, on the 5th of March, 1856, on which day the plaintiffs presented their bill to Fisher, containing the weight, tare, &c., of the 312 tierces, and left it for examination, it being usual for the purchaser to examine the return, calculations, &c., and compare them with his own figures. Two days after, the plaintiffs' clerk called, that is, on the 7th, and asked Fisher for the cash, but did not get it. He

called the following day with the same result, and again a day or two after, when Fisher gave him a check for $2,000 on account, Fisher saying that that was all that he could give that day, and which check was paid. A day or two after, Mr. Lees, one of the plaintiffs, called, when Fisher gave the plaintiffs a check for $5,000, which was not paid at presentment. On the 11th of March, 1856, the day of the date of this $5,000 check, Fisher failed; and, at 2 o'clock P. M. of that day, executed a general assignment to the plaintiff Lees for the benefit of creditors, in which assignment the sum remaining due to the plaintiffs Lees & Waller, for the lard sold, was included in a class of preferred debts, upon which the plaintiffs have received 24 per cent. from the assigned estate. The present action is brought by the plaintiffs Lees & Waller to recover from the defendants the value of these forty-four tierces, upon the ground that no title to them ever vested in Fisher, and that he could therefore transfer none to the defendants, the plaintiffs having demanded the forty-four tierces, and the defendants having refused to give them up.

Upon this state of facts, the referee has found that the plaintiffs parted with the title and ownership of the forty-four tierces, and I think he was justified, by the evidence, in so finding. This was a sale of a large quantity of merchandise for cash. The general rule deduced by the elementary writers, from the cases that have been determined, is, that where no time is fixed for payment, payment and delivery are to be simultaneous acts, and the seller is not bound to deliver until payment is tendered. Story. on Cont. § 803; 2 Kent's Com. 496. This rule will apply very well upon the sale of a single chattel, as in the case put to illustrate it in Shephard's Touchstone, 224—the sale of a horse; but it is scarcely applicable in the sale of a large quantity of merchandise, the delivery of which may occupy considerable time, and in which some time must also intervene to enable the buyer to ascertain the correctness of the weights, to adjust the tare upon the different packages, and generally to ascertain the quality and condition of the merchandise received. As a matter of necessity, therefore, a custom has grown up in this city, in the sales of

merchandise in quantity, and which was proved before the referee, of allowing from a week to ten days for this purpose, during which period no interest is charged upon the sale by the seller. It was further proved, that when the buyer has received the goods, he has, by the custom, full control of them; and that it is the universal custom for the buyer to sell them freely during this time, as well before payment as after, though it would seem that, if the goods were sold to a stranger, it is not the custom to deliver until the price is paid, unless the buyer is well satisfied about him. The parties in this case must be regarded as having contracted with reference to this usage. There is nothing in the case to show that they did not. Fisher was not a stranger. He was a merchant doing business in this city at 84 Broad street. According to the witness, his business was buying to sell again, and he had dealt with the plaintiffs' house, and their predecessors, since the house was formed, more or less for four or five years, the plaintiffs having frequently sold lard to him before. There was no fraud—no pretence that he had wrongfully obtained the possession of the merchandise by any device or fraudulent representation. It was a fair sale in the ordinary course of business. He had a large amount of property at the time, in this city and in Europe, amounting to from $150,000 to $175,000. He had not, at the time, as he testified, any reason to suppose that he would not be able to pay for this lard, and his failure within a week after the delivery of it, that is, on the 11th of March, 1856, up to which period he continued all his payments, was occasioned by advices from Europe, on the 10th, of a large loss upon a sale of lard there—lard having depreciated in consequence of the confirmation of the news of peace between Russia and the allied powers, which created a panic in the public mind in relation to lard and tallow, of the first of which he appears to have been a heavy holder.

There was, then, in this case, a surrender of the merchandise into the possession of the buyer, induced by no fraud, and unaccompanied by any condition that he should not have the right to sell and dispose of it until he paid the price. The law in respect

to a conditional delivery upon the sale of goods is very well stated by Vice-chancellor McCoun in *Buck* v. *Grimshaw*, (1 Edw. Ch. R. 146) : "Whether a sale and delivery be conditional or not, depends upon the particular facts and circumstances of each case. It may be the subject of express stipulation in the contract of sale, or a matter of subsequent agreement when the delivery is made; or it may be inferred, from the course of the transaction and the *usage* of a particular trade, that the vendor did not intend to make, or the vendee to receive, an absolute and unconditional delivery. But the condition must be made to appear as matter of evidence, otherwise the legal presumption would follow, from the fact of the purchasers being in the actual possession of the goods, that the delivery was an absolute one." In *Smith* v. *Lynes*, (1 Seld. 41), PAIGE, J., referring to a sale of goods on condition of being paid for on delivery in cash or commercial paper, declares that " the vendor, to avoid a waiver of the condition of sale, must either refuse to deliver the goods without performance of the condition, or he must make *the delivery, at the time, qualified and conditional*,"—citing *Lupin* v. *Marie*, 6 Wend. 81, and other adjudged cases determining this to be the law ; and all the cases relating to conditional delivery are to the effect that it must appear, from the circumstances, that it was the *intent* of the parties that the delivery should be conditional—that is, that the property should not vest in the buyer ; that he should not have the right to use or dispose of it until he had complied with the condition upon which it was sold. *Hussey* v. *Thornton*, 4 Mass. 405 ; *Whitwell* v. *Vincent*, 4 Pick. 449 ; *Keeler* v. *Field*, 1 Paige, 312 ; *Furniss* v. *Holt*, 8 Wend. 256 ; *Haggerty* v. *Palmer*, 6 Johns. Ch. R. 437; *Russell* v. *Minor*, 22 Wend. 664 ; *Mills* v. *Hallock*, 2 Edw. Ch. R. 652 ; *Copeland* v. *Bosquet*, 4 Wash. C. R. 588 ; *D' Wolf* v. *Babbet*, 4 Mason, 294; *Barret* v. *Pritchard*, 2 Pick. 512; *Buck* v. *Grimshaw*, *supra*; *Bishop* v. *Shilito*, 2 B. & Ald. 329, *note*. Where there is nothing in the circumstances to show that the delivery was thus qualified, the mere fact that the sale was for cash will not, of itself, be sufficient to warrant the legal inference that the delivery is conditional, and that no title is intended to pass to the

buyer until the cash is paid. This was expressly determined in *Chapman & Schoolcraft* v. *Lathrop*, (6 Cow. 110), in which it was held that, where goods are sold upon the condition that they are to be paid for in cash, and they are delivered without payment, the property passes, and the condition is waived. In that case, a quantity of merchandise was sold for cash, and delivered. The next day payment was demanded, and the buyer offered a note endorsed by the seller, and the residue in cash, which the seller refused to receive. A fortnight after the property was demanded, but the buyer refused to give it up. The seller brought trover, and it was held, upon the grounds above stated, that he could not recover; that the property passed to the buyer, and that the plaintiff's remedy was an action for the price. To the same effect was *Haswell* v. *Hunt*, cited in *Tooke* v. *Hollingworth*, 5 Term R. 231. A parcel of tobacco was sold, to be paid for in ready money. The plaintiff's servant delivered it without any order from his master to demand the money, and it was held that the title was vested in the buyer, who had become a bankrupt on the day when the tobacco was delivered. My conclusion, from the authorities, is, that in a cash sale to a solvent buyer, where there is no fraud, no art or device used to obtain possession, but the goods are voluntarily delivered in the usual and ordinary course of business, that the title passes to the buyer by the act of delivery, and that he has, with the possession, the right of immediate disposition, unless there are circumstances indicating, and clearly showing, that the intent was that the delivery should be merely conditional—that no title should pass until the cash was paid; and that it rests with the party, who claims such to have been the fact, to establish and make it out. The cases cited by the appellant do not conflict with this doctrine. In *Leven* v. *Smith* (1 Denio, 571,) the plaintiffs instructed their clerk not to deliver the goods, unless upon payment of the money. He took the goods, consisting of several packages of shoes, to the defendant's store, with the bill. The packages were compared with the bill, were found to be correct; and the defendant offered the clerk a note of the plaintiffs', and eight dollars in cash, in payment. The

clerk declined to receive the note, but said he would see the plaintiff, and take his directions.  He accordingly left, was absent but four or five minutes, when he returned with the plaintiff's answer that he would not receive payment in that way, and with instructions to take back the goods.  The clerk demanded the return of the goods or the payment of the bill in money, which the defendant refused.  It was held that the plaintiff might maintain replevin; and it was very clear, in that case, that there was an intention, on the part of the plaintiff, not to deliver unless the money was paid.  The decision was in conformity with *Bishop* v. *Shilito*, (2 Barn. & Ald. 331, *note*), in which it was held that if a tradesman sell goods to be paid for on delivery, and his servant, by mistake, delivers them without receiving the money, the tradesman, after a demand and refusal, may maintain trover against the purchaser.  In *Van Neste* v. *Conover* (5 How. Pr. 148,) the sale was for cash, payable on delivery.—EDMONDS, J., says: "The agreement was *very precise* that the corn was to be paid for on delivery; and, *unless so paid for, was not to become the property of the defendant.*  Of course, if such was the agreement, the delivery was conditional, and there was no waiver, the bill having been presented with the delivery of the last parcel, and payment demanded the following day."  In *Draper* v. *Jones* (11 Barb. 263,) the sale was not complete.  The terms were not finally adjusted. The goods were delivered with the understanding that they would be sold at a credit of four months, upon security satisfactory to the sellers, and, until it was ascertained what security would be satisfactory to them, there was no sale, though the goods had been delivered.  The minds of the parties had not met.  The contract was not concluded.  It was open for the buyer to propose, and for the sellers to determine whether they would receive what should be proposed by him as the security; and, before that could be ascertained, and while the contract was in this unsettled state, the defendant failed.  It was very clear, in such a case, that he acquired no title.  In *Aguirre* v. *Allen*, (10 Barb. 76), which was in affirmance of a judgment rendered in this court, the question here considered did not arise—the goods, in that case,

were paid for; and *Acker* v. *Campbell* (23 Wend. 372,) was decided upon the ground of fraud: while, in *Herring* v. *Hoppock*, (15 N. Y. R. 409), there was an express stipulation, in writing, that Herring was not to part with, nor were the buyers to acquire, any title to the safe until the note, given for the purchase money, was fully paid. If the agreement had been drawn in view of all the authorities, it could not have been more precise.

. In all these cases, therefore, the intention to make the delivery conditional is plainly inferable from the circumstances, while in this case there is nothing from which any such intention could be inferred. Fisher and the plaintiff were both doing business in the city of New York, and, in making this sale, they must be regarded as contracting with reference to a usage prevailing here, when nothing appears denoting a different or contrary intention. By that usage it is customary for the buyer to sell and dispose of what he buys immediately upon receiving it, without waiting until it is paid for, which is illustrated in this case by Fisher disposing of five-sixths of this lard, in the course of its delivery, to various purchasers, delivering their respective parcels to them on the wharf where he received it. That such a usage should prevail in a great commercial mart, where merchandise is constantly changing hands, is manifest. Goods must be constantly bought, predicated upon orders received for them, or where the buyer, contemporaneous with their purchase, has arranged for their resale, in which he becomes a mere conduit in their transfer to other purchasers. It would be a serious clog upon the facility of commercial transactions, if solvent buyers for cash were precluded from making any disposition of the goods delivered to them, until they had arranged and paid for them. It must frequently be the case, that the agreement of the buyer to pay cash is founded upon his ability to dispose of them to another for cash at a profit, and in which the cash received on the resale is relied upon as the fund for the payment of the original purchase. The law goes far enough when it holds that no title is acquired by delivery where the possession is obtained by fraud, and recognizes the right of the seller to impose, as a con-

dition, that no title shall be acquired by the buyer by delivery, until the price is paid, as well as the vendor's right, in case of insolvency, to stop the goods *in transitu*, before the delivery is complete. Beyond this, full effect should be given to any commercial usage which recognizes the right of property as in the buyer, where it is voluntarily delivered to him, untainted by fraud and untrammeled by conditions, whether it be what is termed a cash sale, or a sale upon time. It is much better to rely upon and give effect to those usages which have sprung up as the fruit of the experience of those engaged in the conduct and management of business, the utility, propriety, and necessity of which is manifest from their general recognition, than to devise rules for the disposition of commercial cases which have not, like the former, the test of experience. If, then, the plaintiff delivered the lard to Fisher with the mutual understanding, inferable from the usage, that he was at liberty to sell and dispose of it, which, as respects the greater part of it, it appears that he did as soon as it was delivered to him, they transferred, and meant to transfer, the title. The right to dispose of it before payment necessarily implies that the property was in him, and that they looked to and relied upon his personal responsibility for payment.

If any doubt could exist, it is removed by the ground upon which the referee placed his decision, that they afterwards accepted part of the purchase money. If a sale is conditional, the seller is bound to exact the performance of the condition, either at the time of the delivery, or within a very short time afterwards, or he will be deemed to have waived it. *Lupin* v. *Marie*, 6 Wend. 77; *Mills* v. *Hallock*, 3 Edw. Ch. R. 652; *Furniss* v. *Holt*, 8 Wend. 247; *Hennequin* v. *Sands*, 25 Wend. 641; *Cangus* v. *Ennis*, 2 Mason, 236. That this was not such a sale, is apparent from the plaintiffs' accepting $2,000 of the purchase money five days after the delivery, and after two demands had been made for payment. That very materially changed the position of the parties as respects the right of reclamation, even if the delivery had been conditional. If the condition is not performed, the

seller may reclaim the property, and, upon demand and refusal, may maintain an action for the wrongful detention. *Levin* v. *Smith*, 1 Denio, 571; *Hennequin* v. *Sands*, 25 Wend. 640 ; *Herring* v. *Hoppock*, 15 *N. Y. R.* 409. To place themselves in a position to maintain such an action, the plaintiffs would have to return, or offer to return, the $2,000 they had received. This they did not do, or offer to do. On the contrary, they not only kept the money, but, within two days after it was paid, Fisher made an assignment of all his property for the benefit of creditors to one of the plaintiffs, in which assignment the residue of the purchase money, $7,378.91, was included in a list of preferred debts, as a debt due and owing by Fisher to them, and upon which they have received a dividend of 24 per cent. All these acts are wholly inconsistent with the existence of a right on the part of the plaintiffs to reclaim from Fisher the 312 tierces of lard, upon the ground that the delivery was conditional, and the condition has not been performed, but are reconcilable only upon the assumption that the transfer of the property to him was absolute. It is suggested to us that the plaintiff Waller cannot be affected by the assignment to his partner Lees, which was made to Lees individually ; but the acts of either party, so far as they relate to or affect this transaction, may be looked to when the object is to ascertain the intent with which the property was delivered by the firm to Fisher. It is said by WAGER, Senator, in *Russell* v. *Minor*, (22 Wend. 670), as the result of his examination of the authorities, "that the property will be considered as passing whenever, from the circumstances proved, the party might be considered as trusting to the ability and readiness of the vendee to perform the agreement on his part, and had, therefore, waived his right to insist upon strict payment or performance, on the part of the vendee, as a condition to passing the title." The evidence before the referee, in my judgment, established such a case, and his report should be confirmed.

Judgment affirmed.